657 F.2d 1055
 108 L.R.R.M. (BNA) 2867, 92 Lab.Cas. P 13,024
 Homer B. ATWOOD, et al., Plaintiffs-Appellants,
v.
PACIFIC MARITIME ASSOCIATION, Portland Stevedoring Company,
an Oregon corporation, and Local 21 of the
International Longshoremen's and
Warehousemen's Union,
Defendants-Appellees.
 No. 79-4348.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 4, 1981.
Resubmitted July 29, 1981.
Decided Sept. 28, 1981.
 
 Charles Robinowitz, Portland, Or., for plaintiffs-appellants.
 Richard C. Hunt, Raymond J. Conboy, Portland, Or., argued, for defendants-appellees; Spears, Lubersky & Campbell & Bledsoe, Portland, Or., on brief.
 On Appeal from the United States District Court for the District of Oregon.
 Before ANDERSON, PREGERSON, and CANBY, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 The plaintiffs, twelve longshoremen, appeal the judgment of the district court, 432 F.Supp. 491 (D.Or.1977), dismissing actions against Portland Stevedoring Company, Pacific Maritime Association (PMA), and Local 21 of the International Longshoremen's and Warehousemen's Union (Local 21). The district court conducted a bench trial, following which it found that Local 21 did not breach its duty to the plaintiffs of fair representation. The actions against Portland Stevedoring and PMA were then dismissed under Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). We affirm.
 
 I. BACKGROUND
 
 2
 On April 2, 1968, a crew of longshoremen employed by Portland Stevedoring was loading a merchant vessel at Longview, Washington. A question arose as to the safety of the procedure used, and arbitration was requested. At approximately 10:00 p. m. that evening, the start of the shift's lunch hour, an arbitrator found that the loading procedure was safe. At 11:00 p. m., each of the plaintiffs here returned to their posts as scheduled. Other members of the shift, however, apparently refused to return to work over the safety issue. The entire 39-man shift was fired on the spot. In a subsequent arbitration proceeding, each of the 39 was suspended from union hiring hall privileges for 15 days.
 
 
 3
 Local 21 appealed the suspension up through the grievance procedure established by the PMA-ILWU collective bargaining agreement until it reached Coast Arbitrator Kagel, whose decision represented the final step in the process. On January 26, 1970, after the suspensions had been served, Arbitrator Kagel remanded the matter back to the Joint Port Labor Relations Committee for findings in each individual case. Following the remand, the committee held several meetings which failed to resolve the dispute.
 
 
 4
 At a committee meeting held on June 27, 1972, employer representatives apparently conceded that the plaintiffs were probably innocent of any wrongdoing, but withheld any back pay for the suspension period when plaintiffs refused to disclose the identities of the longshoremen who did refuse to work. It is not clear whether any of the plaintiffs had firsthand knowledge of which longshoremen actually failed to resume their duties.
 
 
 5
 Some of the difficulty in implementing the Kagel decision arose from the position adopted by the rank-and-file Union membership that either all 39 members of the shift were innocent or all were guilty, a sentiment shared by the plaintiffs. At least one vote was taken at a union meeting subsequent to the Kagel decision in which the membership voted unanimously to adopt the position that the entire shift was innocent.
 
 
 6
 The matter continued to be stalemated for several years after the Kagel decision until November 7, 1973. On that date, the union membership voted to drop the grievance altogether. Local 21 officially withdrew the grievance on January 10, 1974, at a Joint Port Labor Relations Committee meeting. Several reasons were advanced by various members at the November 7 meeting for not pursuing the matter further. The amount of time and money which had already been spent was considered alongside the time and money which would have to go into implementing the Kagel decision on an individual basis. The Union membership continued to insist that either all were innocent or all were guilty, in effect refusing to abide by the Kagel decision. In addition, some of the longshoremen who wished to sue PMA and Portland Stevedoring understood from sources whose identities are not clear that an action could not be filed until the grievance was dropped, and they accordingly requested that the process be terminated. The Union has since noted that the suspended longshoremen received preferential dispatch privileges for non-PMA jobs during the suspension period, and thus had received at least partial relief already.
 
 
 7
 The plaintiffs filed their complaint in the present action in October, 1974, charging PMA and Portland Stevedoring with breach of the collective bargaining agreement and also charging Local 21 with a breach of its duty of fair representation. A pendent state claim for infliction of emotional distress was attached based upon the refusal of PMA and Portland Stevedoring to pay damages until the guilty members of the gang were identified. Punitive damages were requested on the state claim.
 
 
 8
 By an order dated October 13, 1976, the district court disposed of a number of pending motions. The court denied motions for summary judgment filed on both sides because there remained a genuine issue of material fact as to the question of Local 21's breach of its duty of fair representation, and segregated for trial the issues of Local 21's breach and PMA and Portland Stevedoring's liability. The court also dismissed the claims for infliction of mental distress and punitive damages. PMA and Portland Stevedoring moved to strike the plaintiffs' demand for a jury trial for the breach of duty of fair representation portion of the trial while the plaintiffs moved to dismiss Local 21 as a defendant.
 
 
 9
 In a memorandum dated May, 1977, and published at 432 F.Supp. 491, the district court denied the plaintiffs' motion to dismiss Local 21 and granted the employers' motion to strike the demand for a jury trial. The court refused to dismiss Local 21 primarily because it found that a dismissal at that stage would be unfairly prejudicial to PMA and Portland Stevedoring and because a motion to refer the case back to arbitration was then pending. The court struck the demand for a jury trial on the fair representation issue because the plaintiffs had abandoned their damages claim against the Union and therefore were not seeking a legal remedy.
 
 
 10
 Following a bench trial which included the submission of depositions and witness testimony summaries, the court ruled that Local 21 had not breached its duty of fair representation by dropping the grievance. The court found that Local 21 had acted reasonably under the circumstances in deciding not to pursue the matter any further. The plaintiffs do not appeal the outcome of the bench trial.
 
 II. ISSUES
 
 11
 The plaintiffs have raised four issues on appeal:
 
 
 12
 1. Whether the district court erred in denying their motion for summary judgment;
 
 
 13
 2. Whether the district court erred in striking their demand for a jury trial;3. Whether the district court erred in refusing to dismiss Local 21 as a defendant;
 
 
 14
 4. Whether the district court erred in dismissing the claims for intentional infliction of emotional distress and punitive damages.
 
 A. Breach of Duty of Fair Representation
 
 15
 The plaintiffs argue that they were entitled to a partial summary judgment on the issue of the alleged breach by the Union of its duty of fair representation. We have examined the papers on file with the district court at the time that it denied the plaintiff's motion for partial summary judgment and we conclude that the district court did not err in denying the motion.
 
 
 16
 A union breaches its duty of fair representation toward a member of a collective bargaining unit where its conduct is arbitrary, discriminatory, or in bad faith. E.g., Castaneda v. Dura-Vent Corp., 648 F.2d 612, 618 (9th Cir. 1981). A deliberate decision not to pursue a bargaining unit member's grievance any further is arbitrary if made " 'without rational basis.' " Robesky v. Qantas Empire Airways, Ltd., 573 F.2d 1082, 1089 (9th Cir. 1978), quoting N.L.R.B. v. General Truck Drivers, 545 F.2d 1173 (9th Cir. 1976). We therefore must examine the Union's justifications for dropping the plaintiffs' grievances.
 
 
 17
 The district court found that a genuine issue of material fact was presented by the circumstances surrounding the Union's decision to drop the grievance, though it did not elaborate on the precise factual issues it perceived. In answering one of the plaintiffs' interrogatories, Local 21 cited the Kagel decision and the opportunity which was given to all of the suspended longshoremen to participate in a special non-PMA hiring hall as its reasons for not pursuing the matter further. Depositions taken of various plaintiffs indicated that the issue of pursuing the plaintiffs' grievance had been discussed at several union meetings and that several reasons had been advanced in favor of dropping the grievance. Chief among these were some apparent confusion over the meaning of the Kagel decision and the desire of some of the longshoremen to pursue their claims individually.
 
 
 18
 The record thus was not clear at the time of the plaintiffs' motion as to Local 21's reasons for voting to drop the grievance. We note that the record at that point reflected some disagreement among the plaintiffs even as to whether the majority vote by Local 21 membership was binding upon Union leaders. The district court could not have unequivocally inferred that the decision to drop the grievance lacked a rational basis.
 
 B. Denial of Jury Trial
 
 19
 We need not determine here the scope of the right to a jury trial in all fair representation actions. We assume, and expressly do not decide, that plaintiffs were entitled to a jury on the breach of duty of fair representation claim. As stated above, after full bench trial, the district court ruled that Local 21 had acted reasonably under the circumstances in deciding not to pursue the grievance any further. The plaintiffs do not appeal the outcome of the bench trial. This is understandable. A review of the record below clearly indicates that no reasonable jury could properly find a verdict for the plaintiffs on the breach of duty claim. The evidence is overwhelming that Local 21 acted in good faith and with more than ample "rational basis" for its decision not to continue the protracted and fruitless grievance procedures.
 
 
 20
 We can say with the utmost confidence that a motion for a directed verdict would have been granted by the district court under Rule 50(a), F.R.Civ.P. Under these circumstances, the failure to grant a jury trial, if error at all, was harmless under Rule 61, F.R.Civ.P. Cox v. C. H. Masland, 607 F.2d 138 (5th Cir. 1979). No substantial right was affected.
 
 C. Other Issues
 
 21
 In view of our dispositions of the duty of fair representation and right to jury trial issues, we find it unnecessary to reach either of the plaintiffs' remaining contentions. Whether Local 21 should have been dismissed earlier is a moot question because the duty of fair representation issue has been conclusively adjudicated in its favor. The dismissal of the plaintiffs' intentional infliction of mental distress and punitive damages claims is similarly a mooted issue because the actions against PMA and Portland Stevedoring were properly dismissed.
 
 IV. CONCLUSION
 The judgment of the district court is
 
 22
 AFFIRMED.