Martin CAPUTO, Plaintiff,

v.

**NATIONAL ASSOCIATION OF LETTER CARRIERS, United States Postal Service and Branch 99 National Association of Letter Carriers, Defendants.**

No. CV–85–4300.

United States District Court,
E.D. New York.

Feb. 16, 1990.

**1222**

J. Warren Mangan, O'Connor & Mangan, Long Island City, N.Y., for plaintiff.

Keith E. Secular, Cohen, Weiss & Simon, Steven Riegel, Civ. Div., U.S. Attys. Office, E.D.N.Y., New York City, for defendants.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff, a former employee of the United States Postal Service, ("USPS") filed this complaint alleging that USPS had wrongfully suspended him from employment from April 1, 1983 to February 23, 1985 in violation of its national collective bargaining agreement with the National Association of Letter Carriers ("NALC"), of which Caputo was a member, and that NALC and its affiliate, Branch 99 of NALC ("the union") breached their duty to fairly represent plaintiff in his dispute with the Postal Service. Jurisdiction is predicated on Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) and Section 1208(b)-(e) of the Postal Reorganization Act, 39 U.S.C. § 1208(b)-(e).

On February 19, 1988 defendant United States Postal Service, joined by Defendant Branch 99, National Association of Letter Carriers moved this court for summary judgment. For the reasons set forth below, I hereby grant in part and deny in part defendants' motion.

Plaintiff Caputo, while in the employ of the Postal Service as a letter carrier assigned to the Staten Island, New York Post Office, was a member of the Naval Reserve who in February, 1983 was called to active duty for training in Hawaii. On or about February 13, 1983 while on liberty in Honolulu, Caputo was arrested by civilian police and charged with drinking in public, possession of narcotics and resisting arrest. He was detained for forty hours and then released. Plaintiff returned home and on or about March 12 or 13, when he reported to the Navy Reserve for weekend duty, he was placed under arrest by his unit commander and charged with the same conduct that had led to his arrest in Hawaii, in addition to a charge that he was AWOL for the period of detention in Hawaii. Caputo was placed in custody by the Naval Reserve until March 30, 1983 when Judge Henry Bramwell of this Court ordered his release. (CV 83–1229, March 30, 1983.) Plaintiff collected unemployment until December, 1983 and in January, 1984 obtained a job with the Raytheon Company. On July 23, 1984 he began working for the New York City Sanitation Department. On that same date the United States Military Court of Appeals dismissed the court martial charges against Caputo.

On March 30, 1983 Caputo presented Judge Bramwell's order to the Staten Island station where he worked and was informed by his supervisor and by the head of personnel for Staten Island that he would not be permitted to return to work. The head of personnel sent Caputo a letter on April 1, 1983 confirming that he would be suspended until the Postal Inspector's office investigation was completed. Caputo also spoke to the Union shop steward, Anthony Ciarmella, who told him that he had resigned as steward and that he should speak to Paul Daloio, the Union president. According to Caputo, on the evening of March 30, 1983 he went to Daloio's home to discuss the situation and Daloio told him that the Postal Service could refuse to let him work until the court martial proceeding was cleared up. Caputo testified that when he presented Daloio with a copy of Judge Bramwell's decision Daloio "was very pleased that I had that order. He made a copy of it. He has a copy machine in his office there. He said that he would get my job back. He said he would file a grievance timely and everything, and he would take care of things for me. He told me to keep him posted with any updates that I could give him and he would keep me posted." Deposition of Martin Caputo, October 9, 1986 at p. 111. (Hereinafter, "CA-

PUTO II")[1] When questioned during the deposition about the filing of the grievance, Caputo said that Daloio "did say that he wasn't sure when to file that grievance. He said he had to find out if he was supposed to file it then or after the Court case, but whatever, that he would file it timely and take care of everything." CAPUTO II at 113. When asked whether Daloio actually said he was going to file something immediately or rather that he would review the situation and learn about the status of the court case and then file the grievance, Caputo testified that: "(Daloio) wasn't sure. He said he would immediately take action. He wasn't sure as to when to file the grievance, but he was immediately going to look into things. If it had to be done right away he was going to do it.... He definitely did say he was going to file it, but not if it wasn't time to file yet, then he can't file." CAPUTO II at 115.

Daloio testified in his deposition that the first time he ever met Caputo, and the first time they discussed his grievance in person, was at a meeting in Daloio's home in August, 1984 when the plaintiff brought over the documents regarding the court martial, *i.e.*, indicating that the Court of Military Appeals had dismissed the charges. Deposition of Paul Daloio, May 18, 1986 at p. 13.

The collective bargaining agreement negotiated by USPS and NALC applicable to Caputo's employment provides a grievance arbitration procedure for the resolution of disputes.[2] This procedure consists of three "steps" which may culminate in binding arbitration. Step 1 is an oral discussion held between the affected employee and/or a local union shop steward and the employee's immediate supervisor. The Agreement provides that grievances must be initiated by the employee, and may be initiated by the Union, within 14 days after the employee is aggrieved. If the parties do not resolve the grievance, it may then be appealed to Step 2 by the Union. At Step 2, a meeting is typically held between a local union officer and the Postmaster of the post office or his designee. The Union can appeal a Step 2 decision to Step 3, which consists of a meeting between regional representatives of USPS and NALC. At each Step, union and management have authority to enter into a binding settlement of the grievance and if no settlement is reached, NALC can appeal a grievance from Step 3 to final and binding arbitration.

On or about August 9, 1984 the Union filed Caputo's grievance.[3] USPS took the

---

1. Caputo's deposition was taken on two separate days. The deposition taken on August 29, 1986 is designated "CAPUTO I" and the October 9, 1986 deposition is designated "CAPUTO II."

2. The provisions of the collective bargaining agreement relevant to this dispute are contained in Article 15, Section 2, AGREEMENT between United States Postal Service and American Postal Workers Union, AFL–CIO and National Association of Letter Carriers, AFL–CIO; July 21, 1981–July 20, 1984. (Hereinafter "Agreement")

   Step 1: (a) Any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor within fourteen (14) days of the date on which the employee or the Union first learned or may reasonably be expected to have learned of its cause.... The Union also may initiate a grievance at Step 1 within 14 days of the date the Union first became aware of (or reasonably could have become aware of) the facts giving rise to the grievance.

   Article 15, Section 2.

3. The Agreement provides at Article 16, Section 6:

   A. The Employer may indefinitely suspend an employee in those cases where the Employer has reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed. In such cases, the Employer is not required to give the employee the full thirty (30) days advance notice of indefinite suspension, but shall give such lesser number of days of advance written notice as under the circumstances is reasonable and can be justified. The employee is immediately removed from pay status at the end of the notice period.
   B. The just cause of an indefinite suspension is grievable. The arbitrator shall have the authority to reinstate and make the employee whole for the entire period of the indefinite suspension.
   C. If after further investigation or after resolution of criminal charges against the employee, the Employer determines to return the employee to a pay status, the employee shall be entitled to back pay for the period that the indefinite suspension exceeded seventy (70) days, if the employee was otherwise available for duty, and without prejudice to any grievance filed under B. above.

position that it was untimely and would not be entertained. In late October, 1984 Daloio prepared a Step 2 grievance appeal and met with the appropriate management representative, who on January 14, 1985 issued a decision rejecting the grievance as untimely. On January 22, 1985 Daloio prepared a Step 3 appeal which on June 7, 1985 was remanded to Step 2 by the regional officials who instructed the local union and management representative to meet within 15 days to discuss and attempt to resolve the grievance. The remand noted that the grievance had been rejected as untimely at Step 1 and that this matter remained an issue. At that meeting, held on June 20, 1985, Daloio and the management representative settled Caputo's grievance for one month's back pay. Plaintiff sued, alleging that the Union breached its duty of fair representation by failing to file a timely grievance on his behalf, by failing to advise the plaintiff of the progress of his grievance and the settlement, and by agreeing to the terms of the settlement.

Defendants,[4] the moving party, take the position that even according to Caputo's version of events, they should be granted summary judgment. On a motion for summary judgment the moving party bears the burden of establishing that there is no genuine issue of material fact to be submitted to the trier of fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). As the Second Circuit recently articulated it, the general rule in a summary judgment motion is that "all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205 (2d

Cir.1988) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556–57 n. 2, 91 L.Ed.2d 265 (1986) and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).) For purposes of this motion, defendants-movants apparently concede plaintiff's version of the facts and conclude that Caputo's own "deposition testimony fails to disclose facts sufficient to establish a breach of the duty of fair representation," not only on the issue of timeliness but also on the allegations of failure to inform plaintiff on the progress of his grievance and of bad faith in agreeing to the terms of the settlement. (Def. Memorandum In Support of its Motion for Summary Judgment at 4.) (Hereinafter "Def's memo") Plaintiff's position is that an issue of material fact exists on the question of when plaintiff first requested the union's assistance and that "if Plaintiff's testimony is credited by the trier of fact Branch 99 has breached its duty of fair representation." (Pl. Memorandum in Opposition to Defendant's Motion for Summary Judgment) (Hereinafter "Pl. memo") Plaintiff apparently misunderstands defendants' position, which, as indicated above, concedes plaintiff's version of the facts for purposes of this motion.[5]

*Breach of Duty of Fair Representation by Untimely Filing of Grievance*

On the facts asserted by the plaintiff, the question presented is whether the union's failure to file a grievance until August 1984 after having been informed of the facts by plaintiff on March 30, 1983 and having assured him that his rights would be preserved constitutes a breach of the union's duty of fair representation. Defendant's position is that these facts do not

---

4. Branch 99, National Association of Letter Carriers moved for summary judgment and the United States Postal Service joined in the motion, adopting its co-defendant's arguments on the issue of the union's fair representation. Memorandum of Law in Support of Federal Defendant's Motion at p. 2. (Hereinafter "USPS memo") As regards the fair representation claim, this decision will refer to "the defendant," when referring to the union.

5. In its reply, defendants label this factual conflict "irrelevant to the case's ultimate resolution" and state that "(t)he dispute over when Caputo first approached the union clearly could not affect the outcome of this suit because, as we demonstrated above, even if Caputo's version of the facts is credited, he still has not made a sufficient showing to establish a breach of the duty of fair representation." Def.'s Reply at 6.

constitute such a breach and that therefore summary judgment is in order.

In *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967), the Supreme Court articulated the duty of fair representation:

> Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.

Having found that duty implicit in the National Labor Relations Act because of its grant to the union of the exclusive power to represent all employees of a bargaining unit, the Court found the duty breached "only when a union's conduct towards a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." *Vaca,* 386 U.S. at 190, 87 S.Ct. at 916 (citations omitted). *Vaca* involved a suit for damages brought by an employee against his union for failure to process his grievance through to arbitration. The Court enunciated the standard applicable to judicial review of the union's behavior in this context by stating:

> Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable bargaining agreement. *Id.* at 191, 87 S.Ct. at 917.

Plaintiff takes the position that the union's failure to process his grievance for approximately sixteen months evidenced a "total lack of interest in and indifference toward (sic) plaintiff's rights," (Pl. memo at 14), which, while not resulting from discrimination or bad faith, violates the *Vaca* proscription against arbitrarily ignoring a meritorious grievance or processing it in a perfunctory fashion. The defendant union concedes that the grievance was not filed until August, 1984 but characterizes this omission as "a single error in judgment"

and a "mistake," which in the absence of "any additional evidence of invidious misconduct" does not constitute a breach of the duty of fair representation. (Defendant Branch 99's Memorandum at 21.) (Hereinafter "Def. Reply")

A union may breach the duty of fair representation "even in the absence of bad faith or ill will, by conduct or omission which is arbitrary or irrational." *Richardson v. City of New York,* 87 CV 214, 1988 WL 156324 (E.D.N.Y.) 1988 U.S. Dist. LEXIS 16740, citing *N.L.R.B. v. Local 282, Intern. Broth. of Teamsters,* 740 F.2d 141, 147–48 (2d Cir.1984). In *NLRB v. Local 282,* the Court found that the union's failure to provide adequate notice of an arbitration award to all affected employees was arbitrary and constituted a breach of the duty of fair representation. 740 F.2d at 148. "(A)rbitrary conduct amounting to a breach is not limited to intentional conduct by union officials but may include acts of omission which, while not calculated to harm union members, 'may be so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary.'" (citations omitted) *Id.* at 147. At issue in this case is whether the union's failure to file the grievance in this context is an omission that is properly characterized as arbitrary or irrational.

█ In this Circuit, neither tactical errors nor ordinary negligence constitute a breach of the duty of fair representation. "Proof of mere negligence or errors of judgment ... is insufficient.... 'As long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage.'" *Barr v. United Parcel Service, Inc.,* 868 F.2d 36, 43–44 (2d Cir.1989), *cert denied,* — U.S. —, 110 S.Ct. 499, 107 L.Ed.2d 502 (1989) (tactical decisions made by union in grievance procedure do not constitute breach despite possibility that in hindsight they were erroneous) quoting *Cook v. Pan American World Airways, Inc.,* 771 F.2d 635, 645 (2d Cir.1985), *cert denied,* 474 U.S. 1109, 106

S.Ct. 895, 88 L.Ed.2d 929 (1986) (quoting *Capobianco v. Brink's Inc.*, 543 F.Supp. 971, 975 (E.D.N.Y.1982), *aff'd mem.*, 722 F.2d 727 (2d Cir.1983)). Defendant characterizes the untimely filing as a mere mistake or error or judgment and cites *Capobianco* to support that proposition.[6]

■ While the Court in *Capobianco* did state that a plaintiff must show more than mere negligence or errors of judgment on the part of the union, it also stated that an employee who shows arbitrary or irrational conduct could prevail on such a claim. 543 F.Supp. at 975. A union's good faith act or omission is beyond the reach of the judiciary if and only if that action is based on a reasoned decision. As indicated in *Barr*, the *Capobianco* decision holds that "good faith actions based on '*rationally founded decisions*' are immune from court intervention." (emphasis added) *Id.* In that case, plaintiff disputed the union's decision not to initiate proceedings to vacate a modified arbitrator's award which upheld his discharge. *Id.* at 974. Although the union had opposed the company's application to reconsider the earlier award which concluded that plaintiff and two other members should be suspended without pay, the Court found that:

> (T)he union's position that the arbitrator's modified decision reached the just result is wholly supported by the record ... (and) plaintiff has offered no evidence that the union's position was not the result of *reasoned discretion* in weighing the interests of the entire bargaining unit against those of an individual incorrigible employee.... In this circumstance, the union's *deliberated decision not to pursue Capobianco's cause was neither irrational nor arbitrary.* (emphasis added) *Id.* at 976.

In a somewhat different setting, the Second Circuit has held that decisions made without a rational basis are arbitrary and thus actionable. In *Jones v. Trans World Airlines, Inc.*, 495 F.2d 790 (2d Cir.1974), the Court held that a collective bargaining agreement which discriminated in seniority based solely on union membership was a breach of the duty of fair representation. "Bad faith or hostile discrimination is certainly a sufficient condition to evidence an irrational decision, but it is not a necessary condition. It is also sufficient that a distinction be arbitrary or not based on some rational consideration." (citation omitted) *Id.* at 798. In a breach of the duty of fair representation case the Fourth Circuit stated that in order to avoid acting in an arbitrary fashion, "a union may refuse to process a grievance or handle a grievance in a particular manner for a multitude of reasons, but it may not do so without reason, merely at the whim of someone exercising union authority." *Griffin v. International U., United Automobile, A. & A.I.W.*, 469 F.2d 181, 183 (4th Cir.1972).

In this case, defendant has not argued that the union's decision not to file Caputo's grievance until August, 1984 was the result of a reasoned and deliberated process. Defendant contends that "the most that Caputo has shown is that the Union committed a single error in judgment in deciding when to file his grievance." (Def. memo at 21.) However, defendant has not shown this error resulted from an exercise of *judgment, i.e.,* that it was a determination based on a consideration of relevant factors as to when the grievance should be filed. Daloio testified that at the time Caputo was suspended he had no prior experience dealing with members charged with criminal offenses, but that he subsequently learned that the proper way for the union to proceed when faced with an indefinite suspension was to immediately take it to grievance to protect the rights of the union member within the fourteen day period of Step 1. Daloio Dep. 125–126. In this case, the union failed to follow those procedures, the grievance was rejected as untimely and its ultimate resolution was predicated on the fact of its untimeliness.

■ The fact that the union missed the filing deadline for this grievance cannot be characterized as an error of judgment, given that there is no evidence that any ratio-

---

6. *Barr* was decided after defendant's brief was submitted, on December 19, 1986, and after oral argument on the summary judgment motion on February 19, 1989.

nale supports the more than one year delay. The next inquiry is whether the union's omission was the result of mere negligence, which is an insufficient basis on which to make a claim for breach of the duty of fair representation, or rather whether it was the sort of irrational or arbitrary act or omission that does make out such a claim.

The Second Circuit has not directly addressed the question of whether the failure to timely file a grievance violates the *Vaca v. Sipes* admonition that "a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion." 386 U.S. at 191, 87 S.Ct. at 917. The Sixth Circuit, however, in *Ruzicka v. General Motors Corp.*, 649 F.2d 1207, 1211 (6th Cir.1981), *aff'd*, 707 F.2d 259 (1983), *cert denied*, 464 U.S. 982, 104 S.Ct. 424, 78 L.Ed.2d 359 (1983), held that:

> (A)bsent justification or excuse, a union's negligent failure to take a basic and required step, unrelated to the merits of the grievance, is a clear example of arbitrary and perfunctory conduct which amounts to unfair representation. (citation omitted) In our order denying the petition for rehearing we observed that '(o)ur opinion in this action speaks to a narrow range of cases in which unexplained union inaction, amounting to arbitrary treatment, has barred an employee from access to an established union-management apparatus for resolving grievances'.... *'(U)nexplained union inaction' which substantially prejudices a member's grievance could amount to the type of arbitrary conduct which evidences unfair representation.* (emphasis added)

In that case, the Court held that if the union's failure to timely file the grievance was due to reliance on the prevailing practice of freely granting extensions, as the union argued, it would have a sufficient basis on which to be relieved from liability and remanded to the district court for a hearing on that issue. *Id.* at 1211. Such inaction, the Court reasoned, would be based on a "wholly relevant consideration" and "is not the type of arbitrariness which reflects reckless disregard for the rights of

the individual employee," but is only ordinary negligence, for which the union would not be liable. *Id.* at 1212. The Sixth Circuit applied the same test to those facts as it would apply to a union decision not to pursue a grievance that it believes meritless, *i.e.*, whether "the union can articulate a sufficient legal rationale to justify the manner in which a grievance has been handled." *Id.* The *Ruzicka* decision was cited by a Fourth Circuit district court which found that a failure to file timely appeals of grievances was not a breach of the duty of fair representation where "the union knew that the company would not alter its practice of allowing—without exception—late appeals(.)" *McLain v. Wilson*, 591 F.Supp 474, 478 (D.Md.1984). The reasoning of *Ruzicka* is consistent with that of *Capobianco*, which precludes the court from second-guessing a union representative's decisions which have an articulable basis, while deeming a decision lacking a rationale as arbitrary and actionable.

In an earlier case, the Sixth Circuit held that "the duty of fair representation may be breached whenever a union ineptly handles a grievance because it is ignorant of those contract provisions having a direct bearing on the case." *Milstead v. International Bro. of Teamsters, Etc.*, 580 F.2d 232, 235 (6th 1978), *cert denied*, 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211 (1981). In affirming the district court's finding of a breach of the duty, the court pointed out that in spite of the fact that the union had been put on notice by the grievant as to the particular problem he faced, having to do with a security provision in the contract, the union failed to check the applicable provision of the contract in preparation for the grievance hearing. *Id.* at 236. As regards Caputo's claim, the union representative, when informed of Caputo's suspension on March 30, 1983, raised concerns about the proper filing time for such a claim. Daloio then apparently failed to investigate the issue and failed to file the claim within the fourteen day statutory period necessary to safeguard Caputo's rights. Applying the reasoning of the Sixth Circuit, the union was put on notice

as to the problem and its failure to investigate and proceed—its proclaimed ignorance as to how to proceed—would not excuse it from liability.

In *Dutrisac v. Caterpillar Tractor Co.,* 749 F.2d 1270 (9th Cir.1983), the Ninth Circuit found that when the union representative filed a request for arbitration two weeks after the thirty-day limit as the result of an "inadvertent omission," it breached the duty of fair representation. In *Dutrisac,* the plaintiff was fired for excessive absenteeism and the union, having pursued the grievance through a three-step process and lost, decided to submit the grievance to arbitration. *Id.* at 1272. The mistaken late filing resulted in the arbitrator's ruling that the grievance was untimely and therefore not arbitrable. *Id.* The union representative had a system to keep track of filing deadlines and gave no explanation as to why the deadline was missed in this case. *Id.* The union appealed the district court's finding of a breach of the duty of fair representation on the grounds that such an error was mere negligence. *Id.*

As in this case, the Ninth Circuit faced the question of whether the failure to abide by a deadline was "simple negligence" and not a breach of the duty, or "reckless disregard" which constitutes such a breach. The Court determined that the inquiry was better served by discarding those categories as "merely labels" and instead focusing on the different types of unintentional errors. *Id.* at 1272–73.

> We conclude that the union should be responsible for a total failure to act that is unexplained and unexcused.... When the challenged conduct ... is based not on any decision about how to handle the grievance, but on a failure to perform ministerial acts, judicial deference to the

union serves no purpose. A requirement that the union timely pursue those grievance it has decided to pursue does not interfere with union decision making.... (W)e limit our holding that union negligence may breach the duty of fair representation to cases in which the individual interest at stake is strong and the union's failure to perform a ministerial act completely extinguishes the employee's right to pursue his claim. Here, the individual interest is strong because the grievance concerns a discharge, the most serious sanction an employer can impose. *Id.* at 1273–74

A recent district court in this Circuit cited *Dutrisac* in support of its denial of a union's summary judgment motion in a fair representation claim where the union member reasonably relied on the union's assurance that it would represent him at a hearing on a threatened discharge and the union failed to timely request an extension of time to ensure that such a hearing actually took place. *Ince v. National R.R. Passenger Corp.* 693 F.Supp. 1466, 1479 (S.D.N.Y. 1988). "Gaining such an extension is precisely the sort of ministerial act whose negligent omission, in the view of the *Dutrisac* court, gives rise to a claim for breach of the duty of fair representation." *Id.* In *Ince,* Judge Motley adopted the view of the Ninth and Sixth Circuits, as expressed in *Dutrisac* and *Ruzicka* respectively, that the negligent failure to perform a ministerial act makes out a valid cause of action for a breach of the duty of fair representation. Other circuits have limited the duty of fair representation to those acts—ministerial or otherwise—which clearly fall beyond the bounds of negligence, even in cases where the act or omission has draconian consequences.[7]

---

7. For example, in *Hoffman v. Lonza, Inc.,* 658 F.2d 519 (7th Cir.1981), the Seventh Circuit held that in a wrongful discharge case the union's failure to file a written appeal of a grievance within the statutory limits did not breach the duty of fair representation. That Circuit finds the duty breached only where the union intentionally causes harm to an employee and where there is "substantial evidence of fraud, deceitful action or dishonest conduct." *Id.* at 522. Referring to the *Hoffman* standard as a "narrow" one,

the Court more recently clarified its scope: "The union ... breaches (the) duty only if it deliberately and unjustifiably refuses to represent the worker. Negligence, even gross negligence—a much-criticized standard (citation omitted)—is not enough; and obviously, intentional misconduct may not be inferred from negligence, whether simple or gross. *Graf v. Elgin, Joliet and Eastern Ry. Co.,* 697 F.2d 771, 778 (7th Cir.1983). In that case the union representative

■ In this case, there is simply no explanation or excuse for the union's error. Here, the failure to act does make out a claim for the breach of the duty of fair representation because it is not the result of an error of judgment, given that it was not the result of a deliberative process, but rather an omission which is properly characterized as arbitrary. The failure to perform a ministerial task where the individual interest is strong and where the result virtually extinguishes the claim is the sort of omission that is properly subject to judicial recourse because it does not interfere with the union's discretion.

As regards the untimeliness of the filing, Caputo also asserts a persuasive claim of detrimental reliance, a factor which the Second Circuit courts have recognized as relevant in this context. The court in *Ince* found that the union's assurance that a discharge would not take place until after a meeting with the employer together with the union and that the union would take care of the problem at the hearing justified the employee's "impression that the union was committed to meeting its statutory duty to represent him fairly, here by meeting it contractual duty to represent him at the hearing." *Id.* at 1478–79. In taking into account the union member's reasonable reliance on the union representative's statements that the union would take care of the matter, the court cites *Schum v. South Buffalo Railway Co.* 496 F.2d 328 (2d Cir.1974). That case, while focused on the issue of exhaustion of administrative remedies required by the Railway Labor Act, noted that the employee-plaintiff "properly invoked the union's power, aid and prestige to obtain the benefits of union representation in his protest against the wrongful discharge. Reassured on several occasions by union officials that his grievance would be processed administratively, (he) understandably left the matter in the hands of the union.... Under these circumstances, (plaintiff) cannot be denied his

day in court against his employer because his union failed to provide him with fair representation." *Id.* at 331–32.

In the case at bar, Mr. Caputo was reassured by the union representative on March 30, 1983 that he would immediately look into the question of when the grievance should be filed and would take the necessary steps at the proper time. Like the plaintiff in *Dutrisac, Ince* or *Schum,* Caputo reasonably relied on the union's assurances that it would protect his interests. Its failure to do so in this context could be found to constitute a breach of the duty of fair representation.

While not deciding that the failure to timely file the grievance was irrational, given all the evidence in the record it cannot be said as a matter of law that it was not. Accordingly, as to this particular allegation, defendants' motion for summary judgment is denied. *See Smegal v. Gateway Foods of Minneapolis,* 763 F.2d 354, 360 (8th Cir.1985), *cert denied,* 484 U.S. 928, 108 S.Ct. 293, 98 L.Ed.2d 253 (1987).

*Breach of Duty of Fair Representation in Settlement of Grievance*

The union filed Caputo's grievance on or about August 11, 1984 and the Postal Service took the position that it was untimely. While the grievance was in process, in January 1985, USPS offered to reinstate Caputo. Caputo reported to work on February 23, 1985, performed his duties for three days and resigned in mid-March. In appealing the Postal Service's initial rejection of the grievance as untimely, the Union took the position that Caputo should be reinstated and made whole for all lost pay. However, on June 20, 1985, the Union settled Caputo's grievance for one month's back pay.

Caputo claims that the union failed to consult with him while processing his grievance and before agreeing to the settlement, failed to raise significant arguments during the grievance process and agreed to unfa-

---

wrote out an appeal of a discharge decision but inadvertently forgot to file it within the requisite 60 days. Judge Posner held that plaintiff had failed to make out a case for breach of the duty of fair representation, finding the union's

acts to constitute either negligence or gross negligence, but not "extreme recklessness (which) is so close to intentional wrongdoing that the law treats it as the same thing." *Id.* at 778–79.

vorable settlement terms, all of which constitute a breach of its duty of fair representation. As regards these claims, the issue is "whether any reasonable view of the facts would establish that the Union breached its duty of fair representation" and "whether the evidence would support a jury finding that the Union's treatment of (Caputo's) grievance was perfunctory, and therefore arbitrary." *See Smegal,* 763 F.2d at 359–60.

Plaintiff claims that the Union failed to communicate with him as to the processing of his grievance and in so doing breached its duty to fairly represent him. Defendant relies on plaintiff's testimony to establish that there in fact had been numerous telephone communications between Caputo and the union representative on the subject. However, even if no such communications had taken place, defendant is correct in asserting that as a matter of law, the failure to keep a grievant informed of the status of the grievance is not a breach of the duty of fair representation. *Whitten v. Anchor Motor Freight, Inc.,* 521 F.2d 1335, 1341 (6th Cir.1975), *cert. denied,* 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976) (failure to keep grievant informed of status of his grievance insufficient to support claim of unfair representation); *Higdon v. United Steelworkers of America,* 706 F.2d 1561 (11th Cir.1983) (failure to give grievant opportunity to attend and notice of one segment of grievance process not breach of duty).[8] Plaintiff's allegation that the union breached its duty by failing to notify him that they were settling his grievance is meritless for the same reasons. *McLain v. Wilson,* 591 F.Supp. at 479. (no breach of duty of fair representation when grievant is not notified when grievances are withdrawn or settled). A union does not act unfairly when if fails to consult with or advise a grievant of its bargaining activities, *Marietta v. Cities*

*Service Oil Co.,* 414 F.Supp. 1029, 1036 (D.N.J.1976) nor in the legitimate exercise of its discretion, need it obtain the employee's consent before settling a grievance. *Sanderson v. Ford Motor Co.,* 483 F.2d 102, 114 (5th Cir.1973).

Plaintiff contends that the union representative had an obligation to advise him that the union would not pursue the grievance to arbitration if he were no longer a USPS employee, and impliedly that he might have decided differently had he known of that result. In his brief, plaintiff contends that he advised Daloio that "he was considering resignation and that Daloio advised him that it would have no effect on his grievance." Def. Reply at 19. However, in his deposition Caputo stated that Daloio told him, when he was deciding whether to return to the Postal Service, "(t)hat if I went back to work it would help the case out a lot more than if I didn't go back to work." Caputo II, at 157. Defendant relies on this deposition testimony and asserts that the decision to settle the grievance was made only after Caputo resigned and thus that he could not have advised him that the resignation would result in settlement. Pl. memo at 12. Given Caputo's testimony, there is no dispute of fact as to whether or not he was advised that his employment status would effect the outcome of his grievance and plaintiff simply has no legal support for the proposition that the union had a duty to tell him of a decision it had yet to make as to how it would deal with such a contingency.

In *Robesky v. Qantas Empire Airways,* 573 F.2d 1082, 1085 (9th Cir.1978), cited by plaintiff, the court found that the union's failure to inform the plaintiff that her grievance had been settled and would not be taken to arbitration could be found by a trier of fact to be a breach of the duty of fair representation. In that case, the plaintiff suffered real prejudice as a result, giv-

---

8. Plaintiff attempts to distinguish his allegations by claiming that in this case, not only did the union representative fail to keep him advised of developments in the processing of his grievance, but that he did so after assuring plaintiff that he would do otherwise. While the court recognizes that an argument of detrimental reliance has some merit in the context of the timeliness of the filing of the complaint, in this context it is a distinction that simply cannot make a difference. It certainly does not transform an omission which is not actionable into conduct which is "clearly arbitrary under the *Vaca* principal," as plaintiff contends. Pl. memo at 16.

en that she relied on her belief that the grievance was being pursued by the union in rejecting a settlement offer of reinstatement that she otherwise would have accepted. These facts are easily distinguished from those at bar, given that here the plaintiff complains of not being informed of a decision to settle his grievance after he found another job and after being warned that it would hurt his claim. In *Robesky* the union member turned down an offer of reinstatement because the union, in what appeared to the court to possibly be an arbitrary omission, did not inform her that her grievance had been settled and would not be taken to arbitration.

Plaintiff further contends that the union handled the grievance in a perfunctory fashion in violation of *Vaca v. Sipes* by arbitrarily failing to make simple, apparent arguments. The question presented is what standard is appropriate to apply to evaluate union representation in the grievance process and whether these alleged omissions exhibit more than negligence on the union's part. The Third Circuit addressed this issue in *Findley v. Jones Motor Freight, Etc.*, 639 F.2d 953, 958 (3d Cir.1981) and concluded:

> The standard to be applied to union advocacy in grievance proceedings must be governed by the climate in which it functions. The perimeters of the minimally acceptable conduct cannot be too lax, or there will not be an appropriate safeguard for the union member whose important contractual rights are entrusted to and dependent upon the union's efforts in his behalf. On the other hand, to hold lay union representatives to the demanding tests applied to a trained trial lawyer would defeat the aims of informality and speedy resolution contemplated by labor-management grievance agreements.

In that case, the court concluded that close examination of the union's alleged failings, and particularly its failure to raise a contractual provision which plaintiff argued was relevant, failed to demonstrate any prejudice to the plaintiff and at best established only arguably negligent conduct, insufficient to establish liability. *Id.* at 959–60. Similarly, the Seventh Circuit has commented that "(i)t would be unrealistic to require workers 'grieving' on a part-time basis to come up to some judicially devised standard of competent representation akin to that required of lawyers on pain of being found to have committed professional malpractice." *Dober v. Roadway Exp., Inc.*, 707 F.2d 292, 295 (7th Cir.1983).

■ Specifically, plaintiff cites a provision of the collective bargaining agreement which it claims Daloio should have raised on his behalf which he says entitled him to full back pay minus 70 days.[9] That provision requires the payment of back pay for a period of suspension which concludes with the employer's decision to return an employee to pay status. Plaintiff claims that this money was owed him regardless of the timeliness of his indefinite suspension grievance. (Pl. memo at 18) Defendant responds that the Article does not address the timeliness issue. (Def. Reply at 11). Furthermore, the court notes that the provision is only available "if the employee was otherwise available for duty," a caveat which may make the provision inapplicable in this case given that Caputo was otherwise employed for much of the time he was suspended. The parties dispute the relevance of this provision to Caputo's grievance and its import and it is thus a

---

9. Relevant portions of the Agreement at Article 16, Section 6:

A. The Employer may indefinitely suspend an employee in those cases where the Employer has reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment can be imposed.... The employee is immediately removed from a pay status at the end of the notice period.
B. The just cause of an indefinite suspension is grievable. The arbitrator shall have the authority to reinstate and make the employee whole for the entire period of the indefinite suspension.
C. If after further investigation or after resolution of criminal charges against the employee, the Employer determines to return the employee to a pay status, the employee shall be entitled to back pay for the period that the indefinite suspension exceeded seventy (70) days, if the employee was otherwise available for duty, and without prejudice to any grievance filed under B. above.

disputed fact. However, it is not a material dispute given that the allegation that an argument which could have been made was not made does not make out a claim for more than negligence, which is insufficient to breach the duty of fair representation.

Similarly, plaintiff charges that the omission of another argument was prejudicial to his claim, *i.e.*, that Daloio failed to argue that the grievance had been timely filed on the theory that plaintiff had grieved on his own behalf on March 30, 1983 when Caputo discussed returning to work with the head of personnel and the former union shop steward. Defendant responds that this argument would not have been successful, given that even if Caputo's meetings had constituted a Step 1 grievance, the grievance would not have been timely given that it would have had to have been appealed to Step 2 within the contractual time limit of ten days, an appeal which was not taken within that time frame. The union's failure to argue a plausible theory, articulated in hindsight by plaintiff's counsel, is simply insufficient to establish the grounds for a breach of the duty of fair representation claim, given that at best such a failing would be attributable to negligence. Even if the argument were meritorious, defendant is right is stating that the "duty of fair representation was clearly not intended to impose on union officials who are laymen and not lawyers, a standard akin to professional malpractice," citing *Dober* and *Findley, supra.* (Def. Reply at 12.)

Finally, plaintiff contends that the terms upon which the union agreed to settle the grievance were irrational and manifested bad faith. *Vaca v. Sipes* clearly established the union's discretion to settle grievances short of arbitration where it does so in good faith, 386 U.S. 191–92, and such settlements are binding upon the individual employee absent evidence of bad faith. *Suissa v. American Export Lines, Inc.*, 507 F.2d 1343, 1347 (2d Cir.1974). The union defends its decision to settle the grievance on those terms given that it was untimely filed, a factor which Daloio felt "would have killed us in arbitration" when added to the fact that Caputo was no longer working at the Postal Service. Pl.

memo at 27, citing Daloio deposition at 106. Plaintiff charges that "(t)he sole reason for Daloio not going to arbitration was because the Plaintiff had resigned his position and Daloio held this against him." Pl. memo at 18, citing Daloio deposition at 106–107, 111. The relevant deposition testimony is as follows: "Q: It was your position that if Mr. Caputo had went (sic) back to work and stayed with the postal service that you would have processed his case to arbitration? A. Without a doubt." Daloio deposition at 111.

The union defends its decision to settle Caputo's claim short of arbitration on two grounds, one, that the untimeliness of the filing of the claim had jeopardized any claim for recoverable losses, all of which were incurred prior to the untimely filing of the claim in August, 1984, and two, that the union's bargaining leverage was fatally compromised by Caputo's resignation in March, 1985, while his grievance was being negotiated. In reviewing the two-pronged rationale the union offers for its conduct, the court must ensure that it has exercised its discretion with complete good faith and honesty and has avoided arbitrary conduct. *Vaca v. Sipes*, 386 U.S. at 177, 87 S.Ct. at 909.

The union justifies the terms of the settlement on the grounds that from the filing of the grievance in August, 1984 until the settlement in June, 1985 Caputo was employed by the New York City Sanitation Department at a higher salary than he received at the Postal Service. Given the relevant USPS regulations, the income earned from that job would have had to have been deducted from any back pay claim. Def. memo at 28. Plaintiff concedes that "(w)hatever pay the Plaintiff received during the time the Postal Service refused him employment is subject to normal offset" but argues that "the fact that the Plaintiff mitigated damages should not be held against him." Pl. memo at 17, n. 5. Thus, the only real claim for back pay concerned the period prior to the filing of the complaint, presumably from the date the grievance should have been filed, *i.e.* the date of his suspension, March 30, 1983,

until the grievance was actually filed in August, 1984. The union representative concluded that because recovery for those losses was time-barred, it followed that Caputo would have received nothing even if his grievance had been appealed to arbitration and that therefore the settlement of one month's back pay was the best they could hope for. *Id.* This determination did have a rational basis in fact, as the untimeliness of the claim itself is established in the record and is conceded for purposes of this motion.

However, the union also based its decision to settle Caputo's claim on his employment status at the time of the settlement. That rationale raises the question of whether the decision "while not calculated to harm (this) union member( ), ... (was) so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *NLRB v. Local 282*, 740 F.2d at 147. In *Vaca v. Sipes*, while holding that union members do not have an absolute right to have their grievances taken to arbitration, the Supreme Court stated that in making this decision, the union's behavior would be reviewed by reference to its duty of fair representation to "all members without hostility or discrimination towards any." 386 U.S. at 177, 87 S.Ct. at 910. The Court is disturbed by the fact that the compelling reason cited by the union to settle the grievance as it did was the fact that Caputo was no longer employed by USPS. It is not apparent that the union furthers a legitimate interest in discriminating against an employee who has left his job during a lengthy suspension and it is difficult to articulate why such a decision is rational or undertaken in good faith. It is far from apparent that Caputo's employment status in June, 1985 had any relevance to his claim for wages owed him before that time. Assuming that the union's duty of fair representation survived Caputo's decision to leave USPS,[10] and the union has not argued otherwise to this court, a jury could find that the union breached that duty when, based on the fact that Caputo had moved on to other employment, the union decided to settle his grievance.

Reviewing all the allegations of union conduct which plaintiff claims amount to a breach of the duty of fair representation, the Court has concluded that two issues cannot be decided as a matter of law. Thus, a jury should determine whether the union's untimely filing of the grievance was arbitrary and whether the union's decision to settle the grievance based on Caputo's employment status at the time of settlement was a decision made in good faith with a rational basis. It is clear, however, that the union did not breach its duty if it failed to keep the grievant apprised of the status of the grievance or to consult him before it decided to settle. As a matter of law, those claims do not make out a cause of action for the breach of the duty of fair representation.

*Defendants' Motion to Strike Plaintiff's Demand for a Jury Trial*

Federal Rule of Civil Procedure ("FRCP") 39(a)(2) authorizes the court to deny a trial by jury on some or all of the issues for which a jury has been demanded pursuant to FRCP 38 if it finds that "a right of trial by jury of some or all of those

---

**10.** In the collective bargaining context, the Seventh Circuit recently held that the union does not owe a duty of fair representation to former employees unless they are no longer employed because of a labor dispute or unfair labor practice. Examining the definition of "employee" in the National Labor Relations Act (NLRA), the Court concluded that the statute excludes workers who have retired, quit or been fired. However, former employees who have left work because of a labor dispute or unfair labor practice are still considered employees and owed the duty of fair representation. *Merk v. Jewel Companies, Inc.*, 848 F.2d 761, 765 (7th Cir.1988)

"(F)ormer employees therefore lost their status as NLRA 'employees' when they left work for reasons other than a labor dispute or unfair labor practice." *Id.* The Court concluded that because "former workers are not statutory 'employees,' the Union does not represent them. The Union owes no duty to those it does not represent. If it does not have a duty to represent them at all, it does not have a duty to represent them 'fairly'." *Id.* at 766.

In this case, because Caputo was a former employee as the result of a labor dispute, the union continues to owe him the duty of fair representation.

issues does not exist under the Constitution or statutes of the United States." Plaintiff demanded a jury trial and defendants have now moved pursuant to FRCP 39(a)(2) to strike the demand for a jury trial, correctly noting that the relevant statute, 39 U.S.C. § 1208, the National Labor Relations Act ("NLRA"), does not provide for trial by jury and claiming that the Seventh Amendment to the Constitution also provides no such right in this context.

In *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970), the Supreme Court held that the Seventh Amendment guarantee of a right to jury trial in all actions at common law where the value in controversy exceeds twenty dollars was meant to encompass "not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined." In a footnote the Court stated that "the legal nature of an issue is determined by considering, first, the pre-merger custom with reference to such questions; second, the remedy sought; and third, the practical abilities and limitations of juries." *Id.* at n. 10.

■ The federal courts are divided on the question of whether a suit for breach of the duty of fair representation is a suit in equity or at law. *See e.g., Brady v. TWA*, 196 F.Supp. 504 (D.Del.1961), *aff'd.*, 401 F.2d 87 (3d Cir.1968), *cert. denied*, 393 U.S. 1048, 89 S.Ct. 680, 21 L.Ed.2d 691 (1969), *Nedd v. Thomas*, 316 F.Supp. 74 (M.D.Pa.1970), *Acheson v. Bottlers Local Union No. 896*, 83 L.R.R.M. 2845 (N.D.Cal. 1973), *Harrison v. Chrysler*, 60 F.R.D. 9 (S.D.Ind.1973) and *Atwood v. Pacific Maritime Association*, 432 F.Supp. 491 (D.Or. 1977), *aff'd*, 657 F.2d 1055 (9th Cir.1981), denying jury trial for fair representation claims; *Minnis v. Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America, U.A.W., et al*, 531 F.2d 850 (8th Cir.1975), *Cox v. C.H. Masland & Sons, Inc.*, 607 F.2d 138, 143 (5th Cir.1979), *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 221 (5th Cir. 1984), *reh'g denied*, 732 F.2d 941 (1984), *Quinn v. DiGiulian*, 739 F.2d 637 (D.C.

Cir.1984) and *Cook v. National Maritime Union of America*, 617 F.Supp. 1052 (S.D. N.Y.1985), granting jury trial for fair representation claims.

As to the first prong of the *Ross* test, the courts find the duty of fair representation either to be analogous to the common law action of contract or tort and thus triable by a jury, or a creation of the National Labor Relations Act and thus triable to the court. However, in *Curtis v. Loether*, 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974), the Supreme Court answered that question in an analogous setting and concluded that there was a right to a jury trial where a statutory claim sought to enforce a legal right. The Court upheld a right to jury trial in a Title VIII housing discrimination case and stated that:

> Whatever doubt may have existed should now be dispelled. The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if a statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law.

In *Minnis v. Intern. U., United Auto., Aerospace, Etc., supra*, as regards the first prong of the *Ross* test, the Court found that by way of analogy between the duty of fair representation and the traditional common law tort, the first prong of the *Ross* test was satisfied. 531 F.2d at 852. The Eighth Circuit also found that the action "could be characterized as one to enforce a statutory liability ... (for which) the right to a jury trial must be observed absent evidence of a contrary congressional intent," citing *Curtis v. Loether. Id.* The Court noted that the traditional legal remedy was being sought, *i.e.* compensatory and punitive damages, and that there was no reason why a jury could not appropriately handle the case. *Id.* at 852–53.

The Fifth Circuit followed *Minnis* in *Cox, supra*, where the plaintiff asserted a breach of fair representation under the NLRA and the Court, citing the findings of the Eighth Circuit as regards the first and third prong of the *Ross* test and noting the

plaintiff was seeking only the remedy of damages, held that the plaintiff had a right to a jury trial. 607 F.2d at 143. More recently, that Circuit reaffirmed its position that there is a right to a jury trial on the question of the duty of fair representation under the Railway Labor Act in *Roscello, supra,* where the plaintiff sought compensatory damages for mental anguish, prospective damages for wages and benefits, interest on lost earnings and any alternative relief the court deemed appropriate from both the company and the union. 726 F.2d at 220.

The D.C. Circuit, following the Eighth and the Fifth, found that a plaintiff's right to a jury trial in a duty of fair representation case was not compromised by the fact that he sought equitable relief in addition to damages, although the Court noted that the cases on which it relied had been limited to claims for damages only. *Quinn v. DiGiulian, supra* 739 F.2d at 646. The D.C. Circuit held that a breach of the duty of fair representation gives rise to liability for damages that result and hence:

> The trial judge thus properly sent to the jury the questions of whether the union had breached its duty of fair representation and what damages, if any, (the plaintiff) suffered as a consequence; the court properly reserved for itself the question of what equitable relief, if any, (he) was entitled to....
>
> In determining whether there is a right to a jury trial of claims under a modern statutory cause of action, the nature of the remedies authorized and sought has become a more reliable clue to whether the action is legal or equitable in nature than the existence of a precise common law analogy to the modern cause of action. (Citing *Curtis v. Loether*) An action for damages for breach of the duty of fair representation, like a damages action for housing discrimination, is an action to enforce a legal right, and the plaintiff is entitled to a jury trial of that action.

*Id.*

Judge Weinfeld, of the Southern District of New York, relying on *Minnis, Cox,* and *Quinn* held that where the plaintiff sought only money damages and no other equitable relief, he had a right to a jury trial on his claim for breach of the duty of fair representation. *Cook, supra.*

Defendant asserts that the duty of fair representation is an action in equity which should be tried to the court. Defendant asserts that the duty of fair representation claim is without any appropriate parallel in common law and cites *N.L.R.B. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937), in support of that proposition. However, in *Curtis v. Loether,* the Supreme Court clearly stated that *Jones & Laughlin Steel* could not be cited as support for the argument that jury trials are inappropriate in statutory proceedings because it "merely stands for the proposition that the Seventh Amendment is generally inapplicable in administrative proceedings, where jury trials would be incompatible with the whole concept of administrative adjudication and would substantially interfere with the NLRB's role in the statutory scheme." 415 U.S. at 194, 94 S.Ct. at 1008.

The D.C. Circuit's emphasis on the remedy sought as the pivotal factor in making the determination of the right to a jury trial is a useful vantage point from which to distinguish the duty of fair representation cases. For instance, in support of its characterization of the duty of fair representation as an action in equity, the defendant cites *Atwood, supra,* 432 F.Supp. at 496–97, a case in which the court noted the inconsistency of interpretations of the right to jury trial in the context of the duty of fair representation and concluded that because the plaintiffs had abandoned their claim for damages against the union and were left with only injunctive relief, this particular duty of fair representation case was best characterized as analogous to a suit in equity. In fact, both cases cited in that case as precedent for denying a jury trial in fair representation cases preceded the Supreme Court's ruling in *Curtis v. Loether.* In *Acheson, supra,* not only was the case decided prior to *Curtis,* but the only remedy plaintiffs sought was an injunction. Similarly, *Brady, supra,* was a

pre-*Curtis* case in which the main relief sought was reinstatement.

Defendant also relies on a recent decision in which a jury was denied in a fair representation claim, *Griffin v. United States Postal Service*, 635 F.Supp. 190, 193 (N.D. Ga.1986), as precisely on point. However, in that case the plaintiff sought a declaration that the union had breached its duty and attorney's fees from the union and demanded backpay only from the Postal Service. *Id.* The court distinguished *Minnis* and *Cox* on the grounds that in those cases damages alone were sought, and thus granted the union's motion to strike plaintiff's jury demand. *Id.*

In this case, Caputo seeks back pay and attorney's fees from both defendants. In *Bowen v. United States Postal Service*, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983), the Supreme Court held that a union guilty of the breach of the duty of fair representation is liable for those damages attributable to it. In *Bowen*, the Court cites from *Vaca v. Sipes:*

> The governing principle, then, is to apportion liability between the employer and the union according to the damage caused by the fault of each. Thus, damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer.

459 U.S. at 218, 103 S.Ct. at 593–94 (citing 386 U.S. at 197–98, 87 S.Ct. at 920–21). Plaintiff urges that but for the union's breach of its duty he would not have suffered any damage, presumably because a timely filed grievance taken to arbitration would have been successful on the merits. Defendant contends that under *Bowen* the union is responsible only for back pay for the period following the date the grievant would have been reinstated had the union arbitrated his grievance and won, and that the employer alone is liable for back pay from the date of discharge up to that point.

Because Caputo had already been reinstated before his grievance reached the stage where arbitration was an option, defendant asserts that the union in no way caused an increase in his damages. Defendant's argument begs the question. In fact, plaintiff's grievance might well have reached arbitration at an earlier date had the grievance been timely filed, and thus the question of whether the union breached the duty of fair representation and if so, to what extent its breach increased Caputo's damages is precisely the question that must be answered by a jury. *Bowen* requires that damages be apportioned and that the union be held liable to the extent it caused an increase in the plaintiff's damages. The hypothetical arbitration date was a technique used in *Bowen* to accomplish that apportionment. In this case, should the jury find the union guilty of a breach which resulted in an increase in Caputo's damages, it would apportion damages between the union and the Postal Service accordingly.

◼ Plaintiff also claims attorney's fees, which are clearly an equitable remedy. *See Rosario v. Amalgamated Ladies Garment, Etc.*, 605 F.2d 1228, 1245 (2d Cir.1979), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1853, 64 L.Ed.2d 273 (1980). However, the fact that plaintiff seeks an equitable remedy in addition to damages does not effect his right to a jury trial, because as in *Quinn*, the court can and will reserve for itself the question of what equitable relief, if any, is due. *Quinn*, 739 F.2d at 646.[11]

As to the federal defendant, Section 2402 of Title 28 provides in part that "Any action against the United States under Section 1346 shall be tried by the court without a jury …" However, in *Bowen*, the jury sat as an advisory panel on plaintiff's claims against the postal service. 459 U.S. at 214 n. 1, 103 S.Ct. at 591 n. 1. FRCP 39(c) authorizes the court to try any issue with an advisory jury. "The responsibility

---

11. "If the case does present both legal and equitable issues, it is for the jury to decide the legal issues and for the court to decide the equitable issues. The right to a jury of the legal issues cannot be defeated by characterizing them as 'incidental' to the equitable issues." Wright & Miller, Federal Practice and Procedure: Civil § 2305 at p. 34 (1971).

for decision remains with the judge when an advisory jury is used. He must prepare findings of fact and conclusions of law, and it is wholly in his discretion whether to accept or reject, in whole or in part, the verdict of the jury." Wright & Miller, Federal Practice and Procedure: Civil § 2335 at 125–26 (1971).

For the foregoing reasons, this case will be tried to a jury as to defendant union, which will sit in an advisory capacity as regards the federal defendant.

SO ORDERED.