James A. CAPOBIANCO, Plaintiff,

v.

BRINK'S INCORPORATED, Armored Car Chauffeurs & Guards Local Union No. 820, I. B. T., International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Defendants.

No. 79 CV 3168.

United States District Court,
E. D. New York.

July 20, 1982.

Holzka, Donahue, Kuhn & Howard by Steven P. Howard, Staten Island, N. Y., for plaintiff.

Vedder, Price, Kaufman, Kammholz & Day by Joseph D. Luksch, Michael R. Zeller, New York City, for defendant Brink's Inc.

O'Connor & Mangan by J. Warren Mangan, Long Island City, N. Y., James M. O'Neill, for defendant Local 820.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff initially commenced this action by petition in State court to vacate an arbitration award entered pursuant to grievance procedures authorized by the collective bargaining agreement between plaintiff's union and employer. The arbitrator was selected from a panel maintained by former defendant Federal Mediation and Conciliation Service ("FMCS"), which removed the action under 28 U.S.C. §§ 1441, 1442. On defendants' motions to dismiss, the Court held that FMCS is immune from suit, *United States v. Testan*, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *Blackmar v. Guerre*, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952), and that plaintiff lacks standing to challenge an arbitration proceeding to which he was not a party, *Matter of Soto*, 7 N.Y.2d 397, 198 N.Y.S.2d 282, 165 N.E.2d 855 (1960); 9 U.S.C. § 10; N.Y. CPLR § 7511. Nevertheless, plaintiff was permitted to replead to vindicate his personal claim of breach of the collective bargaining agreement under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. See generally, *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 561–62, 96 S.Ct. 1048, 1054–1055, 47 L.Ed.2d 231 (1976); *Smith v. Evening News Ass'n*, 371 U.S. 195, 198–200, 83 S.Ct. 267, 269, 9 L.Ed.2d 246 (1962).

The present complaint, asserting jurisdiction under § 301, alleges that plaintiff's union breached its duty of fair representation by admitting to the arbitrator that plaintiff had been the subject of prior disciplinary action, by failing to advise the arbitrator that he lacks the authority to modify an award on the basis of mistake of fact, and by refusing to institute proceedings in State court, at plaintiff's counsel's request, to vacate the modification of award. Claiming that the union's breach of duty allows plaintiff to personally sue to vacate the modified award, the complaint seeks reinstatement, back pay, monetary damages and attorney's fees.

Defendant Brink's Incorporated ("Brink's") and defendant Armored Car Chauffeurs & Guards Local Union No. 820, I.B.T. ("Local 820") have moved for summary judgment pursuant to Rule 56(b), F.R. Civ.P. Discovery is virtually complete,[1] and plaintiff has not submitted affidavits, depo-

---

1. By Order dated December 9, 1980, as amended on January 23, 1981, all discovery in the action was to have been concluded by February 28, 1981. No extensions have been sought, and except for outstanding objections to certain of plaintiff's interrogatories on the basis of relevancy, it appears that discovery is complete.

sitions or even a statement of disputed material facts, as required by Rule 9(g) of the General Rules of this Court, which controvert the facts set forth in Brink's Rule 9(g) statement. Hence, the action appears ripe for summary judgment.

The undisputed facts are as follows. Plaintiff, James A. Capobianco, was employed by Brink's as a messenger in an armored car crew assigned to "route no. 80" which involved the pick-up and delivery of valuables from banks and commercial establishments pursuant to a predetermined schedule of stops. As messenger, Capobianco had supervisory authority over the other two members of the crew, the driver and guard. From January 16 to February 27, 1979, Capobianco worked route no. 80 on a regular basis. On the latter date, Capobianco, Everett Gifford, the driver, and Francis Russo, the guard, were observed by a private investigator hired by Brink's. A week later, Mattia Mazza, Brink's vice president, informed Capobianco that the February 27 crew was terminated on the basis of certain charges which were reiterated in a letter to Capobianco dated March 9, 1979:

> "On Tuesday, February 27, 1979 during the course of the performance of your employment duties, you committed or acquiesced in the following acts: forging or deliberately falsifying company records, reporting false arrival and departure times at and from scheduled stops, extending your lunch period and coffee breaks in excess of authorized time, violating company security provisions by opening the door of the armoured vehicle to unauthorized persons, failing to complete your assigned route and to service a scheduled customer and extending the workday for purposes of securing unearned wages." Complaint, Exh. A.

Pursuant to the grievance provisions of the collective bargaining agreement in effect between Brink's and the union, the issue of Capobianco's discharge was submitted to arbitration before an FMCS arbitrator. On August 16, 1979, after two days of hearings, the arbitrator issued an Opinion and Award. Comparing the times taken by the crews assigned to route no. 80 before and after Capobianco's period, the arbitrator found that with no substantial difference in the number of stops, the times logged by the Capobianco crew "exceeded that of the several other crews by from 25 minutes to 4½ hours; the average excess was over two hours per trip." Opinion at 4. The arbitrator further noted that the log filed by the Capobianco crew on February 27, 1979 differed in substantial respects from the report of the private detective who had observed the crew on that day. Finding the detective's testimony credible, the arbitrator found that each member of the crew had failed to execute his employment duties. Concluding that the crew had engaged in "stealing time" to build up overtime on the days it worked route no. 80, the arbitrator nevertheless held that no just cause existed for the discharge of the employees. Rather, based on his finding that "[t]he record is devoid of any prior discipline at all against any of [the crew] in all of the many years of their service," Opinion at 5, the arbitrator ruled that suspension without pay for one week was the appropriate penalty for Capobianco and Gifford, and that Russo should be restored to his former position immediately.

By letter dated August 24, 1979, counsel for Brink's requested that the arbitrator reconsider his decision, presenting three grounds in support: (1) Brink's published rules provide that discharge is the sole penalty for employee dishonesty; (2) the arbitrator's decision failed to address the alleged security violations by the Capobianco crew; and (3) the record of the arbitration hearing in fact contained testimony that Capobianco had received several prior warnings concerning previous violations of company rules and policy. Without restating the testimony relating to Capobianco's discipline record, Brink's counsel enclosed copies of the documents from which the witness had read at the hearing. Upon receiving a copy of the letter to the arbitrator, counsel for Local 820 advised the union business agent and submitted a letter dated August 28, 1979 in opposition to Brink's request for reconsideration. In its letter,

the union counsel opposed Brink's position that discharge was the sole available remedy, and responded as follows to the assertion that the record included evidence of prior disciplinary action:

"Clearly, no testimony was offered by Brink's against Gifford regarding prior discipline during the term of his employment. My notes do not reflect the substance of any statements made by Mr. Mazza against Capobianco's prior record. However, I cannot deny that Mr. Mazza testified to some prior disciplinary action being taken against Capobianco." Deft. Brink's Exh. B.

Upon reconsideration, the arbitrator issued the Modification of Award, dated September 4, 1979, which is the subject of plaintiff's instant action. Rejecting Brink's first two grounds for reconsideration, the arbitrator recognized the validity of the third ground and found that Brink's in fact had practiced corrective discipline prior to the dismissal:

"By applying the principle on which I based my August 16th Award to all of the facts in the record, including the fact which was brought out at the original hearings in the matter, that the Employer had previously tried to get Capobianco to straighten out in respect to his obedience to the rules, I now find that adequately corrective discipline was attempted with Capobianco before his conduct was watched by Howell's detective; this conduct, therefore, gave the Employer adequate justification to conclude that Capobianco was incorrigible. Therefore,

I conclude that his discharge was justified and am constrained to modify my August 16th Award to reflect this conclusion." Modification of Award at 4.

Capobianco was informed by the union that it did not intend to move to vacate the modified award, and he retained his present private counsel. Plaintiff's counsel requested that the union proceed in State court to vacate the modified award on the ground that the arbitrator lacked authority to alter the original award under New York law. After conversations and correspondence between the parties, the union informed plaintiff's counsel of its final decision not to proceed further with Capobianco's cause. Union counsel's stated position was that justice had been done in the arbitration proceeding, that Capobianco's conduct merited discharge, and that the merits of the proposed attack were doubtful because the modification constituted a mere correction in the original award.

■ On the instant motion, plaintiff's argument in opposition is essentially twofold: first, that the arbitrator lacked the legal authority to modify the Opinion and Award dated August 16, 1979; and second, that the union breached its duty of fair representation by refusing to initiate proceedings to vacate the modification.[2] Assuming without deciding that the arbitrator was without authority to correct a patent mistake in his characterization of the state of the record, we turn directly to plaintiff's claim of unfair representation.[3]

2. Plaintiff's allegation that the union wrongfully admitted the existence of prior disciplinary action lacks any factual support whatsoever. As quoted in the text above, counsel for the union stated that it could not deny that testimony was heard on the subject at the arbitration hearing.

3. Nothing in either the federal or State arbitration statutes, 9 U.S.C. §§ 1—14; N.Y. CPLR, Art. 75, permits the arbitrator to reconsider the merits of a final decision or to alter the substance of the award. CPLR § 7509, for which there is no federal counterpart, was adopted in 1962 to grant arbitrators the power to modify their awards. But even § 7509 severely restricts the grounds for modification by the arbi-

trator to matters which do not affect the merits of the controversy, such as mathematical miscalculation, description of persons and imperfection in form.

Nevertheless, assuming arguendo the ultra vires nature of the arbitrator's action, the Court remains without power in the circumstances to vacate the modification of award. First, the Arbitration Act, 9 U.S.C. § 10, has no bearing on the instant claim, because only a federal court "in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration." Here, not only was the award made in the Southern District of New York, as evidenced by the arbitrator's signature, plaintiff was not a party to the arbitration; there-

In *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), an employee had been discharged for dishonesty, and the subsequent arbitration between his employer and union resulted in a decision upholding the dismissal. The employee filed a complaint in federal court under § 301 of LMRA, alleging that the union breached its duty of fair representation. The Supreme Court recognized that the employee's success on his § 301 claim for reinstatement and back pay would effectively vacate the arbitration award, and held that the suit is analogous to an action under N.Y. CPLR § 7511(a) to vacate an arbitration award, for purposes of applying the appropriate statute of limitations. Of importance to the instant action, the Supreme Court characterized the employee's "demonstration that the union breached its duty of fair representation" as an "indispensable predicate" to an action for breach of the collective bargaining agreement under § 301.´ 451 U.S. at 62, 101 S.Ct. at 1563.

■ The traditional starting point for analysis of the fair representation issue is the Supreme Court's statement in *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967):

"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith."

Of course, "[t]he grievance processes cannot be expected to be error-free," *Hines v. Anchor Motor Freight, Inc., supra*, 424 U.S. at 571, 96 S.Ct. at 1059, and a grieved employee must show more than mere negligence or

fore, no basis exists for application of the Arbitration Act.

Second, while parties to a collective bargaining agreement may sue under § 301 of the Labor Relations Management Act ("LMRA"), 29 U.S.C. § 185, to vacate or modify an arbitration award, *White Motor Corp. v. International Union, U.A.W., Local Union No. 932*, 365 F.Supp. 314, 316–17 (S.D.N.Y.1973), aff'd, 491 F.2d 189 (2d Cir. 1974) (*per curiam*), an individual employee suing under § 301 must first succeed on the underlying unfair representation claim before he may attack the arbitration award. See generally, *F. W. Woolworth Co. v.*

errors of judgment on the part of the union to establish a claim of unfair representation. *Baker v. Amsted Industries, Inc.*, 656 F.2d 1245, 1251 (7th Cir. 1981); *Singer v. Flying Tiger Line Inc.*, 652 F.2d 1349, 1354 (9th Cir. 1981); *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891 (4th Cir. 1980). To succeed under § 301, an employee must show "substantial evidence of fraud, deceitful action or dishonest conduct," *Humphrey v. Moore*, 375 U.S. 335, 348, 84 S.Ct. 363, 371, 11 L.Ed.2d 370 (1964), "hostile discrimination," *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192, 203, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944), arbitrariness or irrationality, *Jones v. Trans World Airlines*, 495 F.2d 790, 798 (2d Cir. 1974), or conduct in bad faith, *Simberlund v. Long Island R. R.*, 421 F.2d 1219, 1225 (2d Cir. 1970).

■ As long as the union acts in good faith, courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage. *Humphrey v. Moore, supra*, 375 U.S. at 349, 84 S.Ct. at 371. As stated by the Supreme Court:

"Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion."

*Miscellaneous Warehousemen's Union, Local No. 781*, 629 F.2d 1204, 1210 (7th Cir. 1980), *cert. denied sub nom. F. W. Woolworth Co. v. Fell*, 451 U.S. 937, 101 S.Ct. 2016, 68 L.Ed.2d 324 (1981); *Andrus v. Convoy Co.*, 480 F.2d 604, 606 (9th Cir.), *cert. denied*, 414 U.S. 989, 94 S.Ct. 286, 38 L.Ed.2d 228 (1973); *Harris v. Chemical Leaman Tank Lines, Inc.*, 437 F.2d 167, 172 (5th Cir. 1971). Where, as here, the undisputed facts show that the employee was fairly represented by his union, the subsidiary claim under § 301 for relief from the arbitration award necessarily falls.

*Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953).

■ With these principles in mind, it is clear that plaintiff has failed to establish his claim of unfair representation. Plaintiff does not contend that his representation at the hearing was defective in any way, but instead focuses on the union's alleged lack of opposition to the modification of award. As an initial matter, the record shows that union counsel opposed Brink's application for reconsideration. Whether the opposition reached the height of professional standards is not at issue, for even proof of conduct which would be actionable in the private realm for negligent malpractice cannot sustain a claim of unfair representation under § 301. A showing of bad faith or caprice is necessary, of which there is an utter absence herein.

■ Only one reasonable conclusion can be reached from the undisputed facts: the union's representation of Capobianco was performed in good faith, without irrationality or discrimination. First, the union's position that the arbitrator's modified decision reached the just result is wholly supported by the record. Second, the union's representation of the three crew members was consistent and indiscriminately supportive throughout the entire arbitral process. Third, plaintiff has offered no evidence that the union's position was not the result of reasoned discretion in weighing the interests of the entire bargaining unit against those of an individual incorrigible employee. Fourth, plaintiff has not shown that the union's representation of Capobianco involved bad faith, animus or deceit in any degree.

Finally, although the argument could have been pressed before the arbitrator or in State court that the modification of award was ultra vires, the union's position that the arbitrator may correct his decision to conform with the evidence presented at the hearing, even if erroneous, is not without rationality in view of the parties' mutual interest in supporting the integrity of the arbitration process. In other words, the parties were not faced with a situation in which the arbitrator heard new evidence or even reformulated his rationale. Rather, the arbitrator merely applied the principles articulated in the original award to the facts as originally developed. In this circumstance, the union's deliberated decision not to pursue Capobianco's cause was neither irrational nor arbitrary.

Since plaintiff has failed to establish the "indispensable predicate" to his LMRA claim, see *United Parcel Service, Inc. v. Mitchell, supra*, dismissal is appropriate. Accordingly, the motions for summary judgment by defendants Brink's and Local 820 are granted, and the complaint is dismissed.[4]

SO ORDERED.

The Clerk of the Court is directed to enter summary judgment for defendants Brink's and Local 820, dismissing the complaint in its entirety, and to forward copies of this Memorandum and Order to counsel for the parties.

---

4. Although the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America is named and described in the complaint as a party defendant, no actionable allegations are made against it. Hence the complaint is dismissed in its entirety.