**Armando ARTEAGA, Plaintiff,**

v.

**Gus BEVONA, President, Local 32B–32J, Service Employees International Union, AFL–CIO and International Service Systems, Inc., Defendants.**

No. 96–CV–5554(JG).

United States District Court, E.D. New York.

Oct. 16, 1998.

Sam Panish, Bellmore, NY, for Plaintiff.

Ronald A. Goldman, Raab & Sturm, LLP, New York City, Roger H. Briton, Jackson, Lewis, Schnitzler & Krupman, Woodbury, NY, for Defendants.

## MEMORANDUM AND ORDER

GLEESON, District Judge.

This litigation arises from defendant International Service Systems, Inc.'s ("ISS") dismissal of plaintiff Armando Arteaga, and the subsequent decision against Arteaga in an arbitration proceeding at which Local 32B–32J of the Service Employees International Union (the "Union") represented Arteaga. Arteaga has brought a hybrid § 301/fair representation claim, alleging in his complaint that (1) the Union breached its duty of fair

representation, and (2) ISS's dismissal of Arteaga breached the collective bargaining agreement, thereby violating Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

Defendants ISS and the Union have moved for summary judgment. For the reasons set forth below, the motion is granted.

## FACTUAL BACKGROUND

### A. Plaintiff's Termination from ISS

Defendant ISS is in the business of providing contract cleaning and maintenance services to owners, managing agents and tenants of commercial property in the New York metropolitan area. (Union Rule 56.1 Statement ¶ 5.) In 1987, plaintiff Armando Arteaga was hired by a predecessor company of ISS, known as National Cleaning Contractors,[1] and began work as a porter in an office building at 1700 Broadway. (*Id.* at ¶ 17.) On April 20, 1993, after several years working at different buildings throughout New York City, Arteaga was assigned a permanent position as a porter at One Pierrepont Plaza in Brooklyn, New York. (*Id.* ¶¶ 17–25.)

The incident that led to plaintiff's dismissal from ISS occurred on June 23, 1993. On that day, plaintiff was assigned to clean the ninth floor cafeteria after a party held by tenant Morgan Stanley. (Union Rule 56.1 Statement ¶ 26; ISS Rule 56.1 Statement ¶ 5.) While Arteaga was cleaning the Morgan Stanley cafeteria, a controversy emerged over Arteaga's handling of bottles of wine. According to David Cruz, the plaintiff's supervisor, plaintiff was spotted by the cafeteria manager removing two unopened bottles of wine and placing them into his cart. (Union Rule 56.1 Statement ¶ 26.) This cafeteria manager then informed Cruz that plaintiff had taken the bottles. (ISS Rule 56.1 Statement ¶ 6.)

Plaintiff sets forth a different version of events. Plaintiff states that party guests placed empty or partially consumed bottles of wine into plaintiff's garbage cart during the party, and that plaintiff did the same after the party had ended. (Arteaga Dep. at 55, 59–60, 126.) Plaintiff then saw a female cafeteria employee who had taken two partially consumed bottles of wine out of the garbage and was pouring the contents of one bottle into the other. (*Id.* at 127.) The woman approached plaintiff, told him that there were several bottles of wine in the garbage, and said that plaintiff should "be careful with the bottles in the garbage." (*Id.* at 55, 59–60, 127.) According to Arteaga, Cruz appeared shortly thereafter and the woman informed Cruz that plaintiff should be more careful with wine bottles in the future. (*Id.* at 61.)

On the same evening of the Morgan Stanley party, Cruz suspended Arteaga. (ISS Rule 56.1 Statement ¶ 6.) Shortly thereafter, ISS terminated Arteaga's employment and informed him that he was being fired for stealing two bottles of wine from the party. (*Id.* ¶ 7.)

### B. The Grievance Proceedings

After his termination by ISS, Arteaga initiated grievance proceedings pursuant to a collective bargaining agreement. ISS is a member of the Service Employees Association ("SEA"), an organization comprised of cleaning and maintenance contractors in the New York area. (Itzla Aff. ¶¶ 8–9.) Since 1993, SEA has negotiated pattern collective bargaining agreements with the Union,[2] and individual employers have assented to be bound by such agreements. In January 1993, the Union and the SEA concluded negotiations of a pattern collective bargaining agreement known as the 1993 Building Agreement, to which ISS agreed to be bound. (*Id.* ¶¶ 10, 13–15.)

Article V of the 1993 Agreement sets forth the "Grievance Procedure" for members of the Union. (Goldman Aff. Ex. A at 8–10.) Under this grievance procedure, there are

---

**1.** In or around August 1993, the operations of National Cleaning Contractors were merged into and subsumed by ISS. (Union Rule 56.1 Statement ¶ 6.) National Cleaning Contractors will hereafter be referred to as ISS.

**2.** For the sake of clarity, it is again noted that the "Union" refers to defendant Local 32B–32J, Service Employees International Union, AFL–CIO. Arteaga was a member of the Union. (Itzla Aff. ¶ 12.)

three steps by which all employee grievances are handled prior to Arbitration. Under Step 1, a grievance is "taken up" directly by the employer and the Union. Under Step 2, if the employer and the Union are unable to resolve the grievance, it is then taken up by representatives of the SEA and the Union. If the grievance is still not resolved it proceeds to Step 3, by which either (1) both parties agree to refer the grievance to a Joint Union Association Committee, or (2) if both parties do not so agree, the grievance is automatically subject to binding arbitration under Article VI of the 1993 Agreement.

Shortly after June 23, 1993, Arteaga approached his union delegate Dan Gross and filed a grievance alleging unjust discharge. (Itzla Aff. ¶ 20; ISS Rule 56.1 Statement ¶ 10; Arteaga Dep. at 65, 168) Mr. Gross discussed the grievance with Arteaga, and attempted to call David Cruz in order to help Arteaga get his job back. (Arteaga Dep. at 65–66.) Subsequently, a Step 1 grievance hearing was held between Mr. Gross for the Union and Fred Surace for the employer ISS. (*Id.* at 66–67, 172.) During the course of the hearing—which apparently was held over the telephone (Gross Dep. at 17)—Mr. Gross stated that the allegedly stolen wine had been in the garbage, and that Arteaga had done nothing wrong. (Surace Dep. at 68.) No resolution was reached, as ISS refused to reinstate Arteaga. (*Id.* at 69; Gross Dep. at 18.)

In accordance with the 1993 Agreement, a Step 2 meeting was then held on September 8, 1993. (Surace Dep. at 22; ISS Rule 56.1 Statement ¶ 9.) Arteaga, his wife, Mr. Gross, Mr. Surace, and Fred Fisher—a hearing officer appointed by the SEA—were present at the Step 2 meeting. Mr. Surace stated ISS's position that Arteaga had been discharged for stealing two bottles of wine. (Surace Dep. at 24.) Arteaga testified that he had placed two bottles of wine in his garbage, but denied that he was stealing the bottles. (Surace Dep. at 25.) The Step 2 meeting also failed to produce any resolution, as ISS refused to reinstate Arteaga. The matter thus

proceeded to arbitration. (Union Rule 56.1 Statement ¶ 21; Surace Dep. at 28–29).

### C. The Arbitration Proceedings and Awards

The arbitration of the grievance filed on behalf of Arteaga was initially scheduled to be held on June 13, 1995. At the request of ISS, this first scheduled date was adjourned, and the case was marked "peremptory" against ISS. (Union Rule 56.1 Statement ¶ 32; Itzla Aff. ¶ 22.) The arbitration was rescheduled for October 6, 1995, but that hearing was adjourned on the mutual consent of the Union and ISS. (Union Rule 56.1 Statement ¶ 33; Itzla Aff. ¶ 23.)

The third scheduled date for the arbitration of Arteaga's grievance was January 15, 1996. Arteaga was present, as was Amy Spivak,[3] an attorney with the firm then known as Manning, Raab, Dealy & Sturm. Spivak was the Union's counsel assigned to represent Arteaga in connection with the arbitration proceedings. (Itzla Aff. ¶ 26.) However, ISS did not appear at the January 15, 1996 hearing. Because the matter had already been marked "peremptory" against ISS, the Union requested that the arbitration proceed. Contract arbitrator Walter X. Stanton granted that request, and conducted the hearing *ex parte*. (Itzla Aff. ¶ 27; Union Rule 56.1 Statement ¶¶ 37–38.)

On January 18, 1996, Arbitrator Stanton issued a default award in which he ordered that ISS reinstate Arteaga to his former position at One Pierrepont Plaza, without loss of seniority. Arbitrator Stanton retained jurisdiction to determine the amount, if any, of back pay to which Arteaga was entitled. Arbitrator Stanton's award also stated that "[t]he Employer may seek to reopen this case by providing to this Office within 14 days of date of affirmation a reason for its failure to appear which this Office would consider satisfactory to justify Employer's failure to appear." (Russo Aff. Ex. C, at 2.)

Upon receipt of Arbitrator Stanton's award, ISS moved to reopen the case on the

---

3.  Amy Spivak's last name is now Itzla. Accordinging to Ms. Itzla, Manning, Raab, Dealy & Sturm is the predecessor firm to Raab & Sturm, LLP, which represents the Union. (Itzla Aff. ¶¶ 1, 3.)

ground that its failure to appear at the hearing was due to an industry-wide commercial building strike conducted by the Union. (Union Rule 56.1 Statement ¶ 40.) The strike, which had begun on or about January 5, 1996, lasted until the first week of February 1996, and among the employers who were struck by the union was ISS.[4] (Itzla Aff. ¶ 34.) Arbitrator Stanton rescheduled the matter for arbitration on April 1, 1996. As a threshold issue, the arbitrator was to assess the excuse offered by ISS for its prior failure to appear at the January 15, 1998 hearing. (Union Rule 56.1 Statement ¶ 41.)

Prior to the arbitration of April 1, 1996, Arteaga met with Amy Spivak—counsel for the Union and his representative at the hearing—to discuss his case. Arteaga and Spivak present differing descriptions of their conversation. Arteaga claims that he informed Spivak that the chief of security from One Pierrepont Plaza would testify that he had been watching the security video cameras on the night Arteaga allegedly stole the bottles of wine, and that this security officer would state that he had not seen Arteaga do anything wrong. (ISS Rule 56.1 Statement ¶ 18; Arteaga Aff. at 97.) Arteaga also claims that he told Spivak of another witness who would testify that David Cruz, Arteaga's former supervisor at ISS, would frequently "just go and take money, borrow it" from the witness. (ISS Rule 56.1 Statement ¶ 19, Arteaga Dep. at 99.)[5] According to Arteaga, Spivak said that it was unnecessary to produce such witnesses. (Pl. Opp. to ISS Local Rule 3(g) Statement ¶ 19; Arteaga Dep. at 98, 100.)

In her affidavit, Spivak states that Arteaga did not indicate that he had any other potential witnesses besides himself. (Itzla Aff. ¶ 31.) Spivak also claims that Arteaga failed to advise her of any other evidence Arteaga deemed relevant. (Id.) According to Spivak,

Arteaga stated that he believed he was being mistreated by David Cruz of ISS because other workers purchased Cruz's lunch while Arteaga would not. (Id.) Spivak further states that she fully reviewed the facts of the case with Arteaga before proceeding to arbitration. (Id. ¶ 32.)

The following people were present at the April 1, 1996 arbitration hearing before Arbitrator Stanton: Arteaga, Dan Gross of the Union, Amy Spivak, Fred Surace as the representative for ISS, and Jose Gutierrez as Arteaga's interpreter. (ISS Rule 56.1 Statement ¶ 16.) The arbitration hearing began with ISS setting forth the reason for its failure to appear at the previous hearing. (Union Rule 56.1 Statement ¶ 43.) The arbitrator reserved decision on this threshold issue, and the case then proceeded to merits.[6] (Union Rule 56.1 Statement ¶ 43; Itzla ¶ 34.) Fred Surace testified on behalf of ISS, discussed Arteaga's employment history, and was cross-examined by Spivak. (Union Rule 56.1 Statement ¶ 44.) According to Spivak, she established during her cross-examination that Surace did not have first-hand knowledge of the events leading to Arteaga's discharge. (Itzla Aff. ¶ 35.) After Surace's testimony, ISS rested its case. (Id.)

In presenting her case on behalf of Arteaga, Spivak requested that Arbitrator Stanton restore Arteaga to his position with full pay. (ISS Rule 56.1 Statement ¶ 21.) Spivak then called Arteaga as a witness. (Itzla Aff. ¶ 35.) Arteaga was given a full opportunity to explain his version of events, and denied that he had taken anything from One Pierrepont Plaza. (ISS Rule 56.1 Statement ¶ 22; Union Rule 56.1 Statement ¶ 45; Itzla Aff. ¶ 36.) According to Spivak, Arteaga also testified as to his prior employment history and the problems he had with Cruz. (Itzla Aff. ¶ 36.) Specifically, Arteaga testified that he be-

---

4. According to Amy Spivak, Fred Surace subsequently testified at the April 1, 1996 arbitration hearing that ISS had been unable to appear at the January 15, 1996 hearing because Surace was working 18 to 20 hour days to deal exclusively with the industry-wide strike. (Itzla Aff. ¶ 34.)

5. Presumably Arteaga believed this witness would support his claim that Cruz fired him not because of any purported theft, but because Arteaga refused to buy lunch for Cruz or otherwise pay kickbacks to Cruz. (See Arteaga Dep. at 57, 63; Compl. ¶ 18.)

6. Arbitrator Stanton subsequently found that ISS's explanation for its absence was "satisfactory." (Russo Ex. D at 2.)

lieved he had been treated badly by Cruz because he refused to buy Cruz's lunch. (*Id.*) Following cross-examination by counsel for ISS, both sides rested. (Union Rule 56.1 Statement ¶ 46; Itzla Aff. ¶ 36.)

On June 19, 1996, Arbitrator Stanton issue his final Opinion and Award. Arbitrator Stanton stated that he had been presented with conflicting testimony regarding the two bottles of wine, and that he "believed the Employer." (Russo Ex. D at 2.) Having credited ISS's version of events, Arbitrator Stanton denied Arteaga's grievance. (*Id.* at 3.) This litigation followed.

### D. *The Present Litigation*

Plaintiff's complaint alleges two causes of action.[7] First, the plaintiff claims that the Union breached its duty of fair representation during the resolution of plaintiff's grievance with ISS. (Compl.¶ 34.) In support of this claim, the plaintiff sets forth twelve alleged omissions on the Union's part. Specifically, plaintiff complains that the Union failed to: (1) confirm the arbitration award of January 16, 1996; (2) object to the setting aside of the first award; (3) obtain videotapes showing that plaintiff did not steal the two bottles of wine in question; (4) properly consult with plaintiff regarding appropriate defenses; (5) take appropriate action after being informed by plaintiff that his supervisor had been "extorting kickbacks"; (6) interview witnesses requested by plaintiff regarding his conduct on the date of the alleged theft; (7) allow character witnesses to testify, despite plaintiff's request; (8) utilize a translator to interview plaintiff; (9) ascertain that the arbitrator had not taken the oath required by New York Civil Practice Law and Rule ("CPLR") 7506(a); (10) object to the modification of the initial arbitration award pursuant to CPLR 7509; (11) commence a Court proceeding to enjoin the second arbitration hearing, despite the fact that the arbitrator allegedly "exceeded his authority and abused his discretion" in ordering such a hearing; and (12) furnish a transcript of the proceedings to plaintiff. (*Id.*)

7. Plaintiff's Verified Complaint dated October 14, 1996 was filed in the State Supreme Court,

Plaintiff's second cause of action alleges that ISS violated the collective bargaining agreement. Plaintiff appears to base this cause of action on his claims that: (1) ISS discharged plaintiff without just cause (*id.* ¶ 41), and (2) ISS's request that the arbitrator modify or vacate his initial award was "made in bad faith and contrary to law." (*Id.* ¶ 42.)

## DISCUSSION

### A. *The Summary Judgment Standard*

Summary judgment must be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In determining whether material facts are in dispute, all ambiguities must be resolved and all inferences drawn in favor of the non-moving party. *Castle Rock Entertainment, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir.1998).

The initial burden is upon the moving party to demonstrate the absence of any genuine issues of material fact. *Adams v. Department of Juvenile Justice,* 143 F.3d 61, 65 (2d Cir.1998). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted). The non-moving party cannot survive a properly supported motion for summary judgment by resting on his pleadings "without offering 'any significant probative evidence tending to support the complaint.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

County of Kings. Defendants subsequently removed the action to this Court.

B. *Hybrid § 301/Fair Representation Claims*

As the Supreme Court has stated, "[i]t is now well established that, as the exclusive bargaining representative of ... employees ..., [a] Union ha[s] a statutory duty fairly to represent all of those employees." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). This duty of fair representation, which is inferred from a union's exclusive authority under the National Labor Relations Act ("NLRA"), "requires a union 'to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.'" *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 563, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990) (quoting *Vaca,* 386 U.S. at 177, 87 S.Ct. 903).

▬ This action links a claim for the breach of the duty of fair representation with a claim that the employer breached a collective bargaining agreement in violation of Section 301 of the Labor Management Relations Act. In *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court noted that "[i]t has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement." *Id.* 462 U.S. at 163, 103 S.Ct. 2281. As a general rule, however, an employee is required to exhaust any grievance or arbitration remedies provided for in the collective bargaining agreement, and such remedies often allow for very limited judicial review. *Id.* 462 U.S. at 163–64, 103 S.Ct. 2281. As a result, when the union representing the employee in such proceedings breaches its duty of fair representation, "th[e] rule works an unacceptable injustice." *Id.* 462 U.S. at 164, 103 S.Ct. 2281. In such situations, an employee may bring what the Supreme Court has referred to as a "hybrid § 301/fair representation claim." *Id.* 462 U.S. at 165, 103 S.Ct. 2281. "The suit against the employer rests on § 301, since the employee is alleging a breach of the collective bargaining agreement. The suit against the union is one for breach of the union's duty of fair representation, which is

implied under the scheme of the National Labor Relations Act." *Id.* 462 U.S. at 164, 103 S.Ct. 2281.

▬ In order to prevail on the type of hybrid suit that Arteaga has brought here, a plaintiff must succeed in both of his claims. "Whether the employee sues both the labor union and the employer or only one of those entities, he must prove the same two facts to recover money damages: that the employer's action violated the terms of the collective-bargaining agreement and that the union breached its duty of fair representation." *Terry,* 494 U.S. at 564, 110 S.Ct. 1339; *see also DelCostello,* 462 U.S. at 164–65, 103 S.Ct. 2281 ("the two claims are inextricably interdependent. To prevail against either the company or the Union, employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.") (alterations and quotations omitted). Thus, if summary judgment is appropriate with regard to Arteaga's fair representation claim, his entire action will fail. *See Young v. United States Postal Serv.,* 907 F.2d 305, 307 (2d Cir.1990) ("the Union's breach is a prerequisite to consideration of the merits of plaintiff's claim against her former employer for improper discharge.").

C. *The Union's Duty of Fair Representation*

"A union breaches its duty of fair representation when its conduct toward an employee it represents is 'arbitrary, discriminatory, or in bad faith.'" *Young,* 907 F.2d at 308 (quoting *Vaca,* 386 U.S. at 190, 87 S.Ct. 903). "To survive a motion for summary judgment, a plaintiff alleging a breach of the duty of fair representation must 'set forth concrete, specific facts from which one can infer a union's hostility, discrimination, bad faith, dishonesty or arbitrary exercise of discretion.'" *Gold v. Local Union No. 888,* 758 F.Supp. 205, 208 (S.D.N.Y.1991) (quoting *Spielmann v. Anchor Motor Freight,* 551 F.Supp. 817, 822 (S.D.N.Y.1982)); *see also Capobianco v. Brink's Inc.,* 543 F.Supp. 971, 975 (E.D.N.Y.1982) ("[t]o succeed under § 301, an employee must show substantial

evidence of fraud, deceitful action or dishonest conduct, hostile discrimination, arbitrariness or irrationality, or conduct in bad faith.") (internal quotations and citations omitted).

The Supreme Court has stated that a union breaches the duty of fair representation when it "arbitrarily ignore[s] a meritorious grievance or process[es] it in perfunctory fashion." *Vaca,* 386 U.S. at 191, 87 S.Ct. 903. In *Barr v. United Parcel Service, Inc.,* 868 F.2d 36 (1989), the Second Circuit expanded on this rule. Plaintiff Barr brought a hybrid § 301/duty of fair representation claim against his labor union and his former employer, United Parcel Service, Inc. ("UPS"). His fair representation claim was based on alleged failings at each stage of the grievance dispute process. With regard to the Step 1 meeting between the union and employer, Barr alleged that the union breached its duty by failing to call witnesses at the meeting, by failing to prepare properly for the meeting, and by permitting the shop steward rather than the union's local business agent to represent him at the meeting. *Id.* 868 F.2d at 40. Regarding the Step 2 meeting, Barr alleged that the union again failed to call certain witnesses, failed to request that a UPS official interview those witnesses, and failed to require that the security guard who originally reported Barr's failure to comply with UPS regulations be present at the meeting. In addition, Barr complained that the union representative failed to meet with him before the Step 2 meeting, was ill-prepared and argued unforcefully. *Id.* 868 F.2d at 41. With regard to the arbitration hearing, Barr alleged that the adverse award resulted from three omissions: (1) the union failed adequately to prepare for the hearing, as evidenced by the fact that the union did not investigate an alleged UPS policy of replacing full-time employees with less expensive part-time workers; (2) the union should have presented evidence of a prior incident between Barr and the security guard, because such evidence would have shown that the security guard had hostile intent and ulterior motives for complaining about Barr; and (3) the union failed to raise the issue of UPS's alleged policy of removing full-time employ-

ees, and accused the union of complicity in such a policy.

After a jury verdict in Barr's favor, the defendants appealed, contending that there was insufficient evidence of the union's alleged breach of the duty of fair representation for the claim to have gone to the jury. *Id.* 868 F.2d at 37. The Second Circuit agreed, and vacated the judgment in Barr's favor. In so ruling, the Second Circuit held that

"[w]hile each of the alleged breaches may, with the benefit of hindsight, be viewed as a possible tactical error by Local 804, none of them, taken either singly or collectively, are nearly sufficient to make out a prima facie case that Local 804 breached its duty fairly to represent Barr."

*Id.* 868 F.2d at 43. The court stated that Barr would have had to show either that a conspiracy existed between the union and the employer, or that the union's "tactical decisions ... amounted to conduct and omissions so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary." *Id.* 868 F.2d at 43 (internal quotations omitted). The court further noted as follows:

"Two elements must be proven for a breach of the duty of fair representation claim: The union's conduct must, first, have been arbitrary, discriminatory or in bad faith, and second, it must have seriously undermine[d] the arbitral process."

*Id.* (internal quotations and citations omitted) (alteration in original).

As applied to the facts of the case, the Second Circuit found that Barr's allegations established that the union may have made "tactical errors" during the grievance process. However, according to the court, "[t]actical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." *Id.* "As long as the union acts in good faith, the courts cannot intercede on behalf of employees who may be prejudiced by rationally founded decisions which operate to their particular disadvantage." *Id.* 868 F.2d at 43–44. Because the court found that any errors on the union's

part were of a tactical nature and that there was no evidence of bad faith, the judgment against the union was vacated and the complaint dismissed.

Arteaga has set forth numerous ways in which the Union allegedly violated its duty of fair representation. Based on the holding in *Barr* and other decisions within this circuit, I now assess each of Arteaga's claims.

### 1. *Failure to Preserve First Arbitration Award*

■ Several of Arteaga's claims relate to the Union's alleged failure to preserve the default arbitration award of January 16, 1996. Specifically, Arteaga alleges that the Union breached its duty of fair representation by not confirming the first award, by not objecting to the Arbitrator's decision to set it aside, and by not commencing a court proceeding to enjoin the second hearing. Presumably, Arteaga believes that if the Union had acted differently, the second adverse award would never had issued.

■ Even assuming that Arbitrator Stanton acted beyond his legal authority in setting aside his initial award,[8] the Union's failure to confirm that award or object to its modification does not rise to a breach of the duty of fair representation. By its terms the first arbitration award allowed the employer to explain its absence and attempt to reopen the original award. Even if counsel retained by the Union were negligent in failing to object to such a provision, negligence alone does not amount to a breach of the union's duty. *Barr*, 868 F.2d at 43. Bad faith or improper motive must also be present. *See Capobianco*, 543 F.Supp. at 976 (absent showing of "bad faith, animus or deceit," union's lack of opposition to modification of arbitration award does not breach duty of

fair representation.) Because the record is devoid of any indication that the Union's failure to preserve the first arbitral award or prevent the second was the result of bad faith, Arteaga has failed to establish an essential element of his claim.

### 2. *Failure to Object to Lack of Proper Oath*

■ Arteaga claims that the Union breached its duty of fair representation by not pointing out Arbitrator Stanton's failure to take the oath provided for in CPLR 7506(a). As noted, the Second Circuit requires the plaintiff to show two elements: that the Union's conduct was "arbitrary, discriminatory or in bad faith," and that such error "seriously undermined the arbitral process." *Barr*, 868 F.2d at 36. Plaintiff has not met either burden. There is no indication that any failure to insist upon the arbitrator's oath was the result of bad faith or ill will on the Union's part. Moreover, while the oath is of course required under the terms of the CPLR, plaintiff has not adduced any specific evidence that the lack of the oath "seriously undermine[d]" the arbitral process such that this Court should upset the arbitrator's decision.

### 3. *Failure to Conduct Investigation and Prepare Properly for Arbitration Hearings*

■ Arteaga has claimed that, by failing to investigate his claims and properly prepare for the arbitration hearing, the Union has breached its duty. In support of this allegation, Arteaga complains that the Union did not secure a supposedly exculpatory videotape, did not investigate Arteaga's charge that Cruz demanded kickbacks, did not provide a translator,[9] and did not interview witnesses requested by plaintiff.[10]

---

**8.** CPLR 7509 grants arbitrators the power to modify their awards, but only under highly specific grounds set forth in CPLR 7511(c), such as mathematical miscalculation or imperfection in form. *See* CPLR 7509 practice commentaries; *see also Capobianco*, 543 F.Supp. at 974 n. 3.

**9.** Although Arteaga brought his own translator to the arbitration proceedings, he faults the Union for failing to provide a certified translator. (Arteaga Aff. ¶ 21.)

**10.** As noted previously, there is a factual dispute as to whether Arteaga actually suggested any witnesses. Arteaga has stated that he requested that the security guard at One Pierrepont Plaza be interviewed, and that the Union locate another ISS employee who would testify as to kickbacks allegedly demanded by Cruz. Ms. Spivak, by contrast, has stated that plaintiff did not suggest any witnesses other than himself. For purposes of the resolving the present motion, I accept plaintiff's version of the facts.

■ In his submission pursuant to Local Rule 3(g), Arteaga suggests that each of these facts demonstrates that the Union acted in bad faith in its handling of his grievance. Beyond such conclusory statements, Arteaga has not presented any specific evidence that the Union's inaction amounts to bad faith conduct. Plaintiff bears the burden of setting forth evidence from which a rational jury could conclude that the Union's conduct rose beyond negligence to the point of bad faith. The generalized and conclusory allegations set forth in plaintiff's Rule 3(g) statement do not satisfy the burden. *See Spielmann v. Anchor Motor Freight, Inc.*, 551 F.Supp. 817, 822 ("[C]onclusory allegations without specifying supporting facts to show the union's lack of good faith fail to state a valid claim.") (quoting *Lusk v. Eastern Prods. Corp.*, 427 F.2d 705, 708 (4th Cir.1970)). "A mere showing that the Union representative might have been negligent or made a mistake in judgment is not enough to make out a claim of lack of fair representation." *Spielmann*, 551 F.Supp. at 823; *see also Ciano v. Utility Workers Union*, No. 94 Civ. 3423, 1995 WL 489452, at *12 (S.D.N.Y. Aug. 15, 1995) (rejecting claim that Union's alleged inadequacy of case preparation breached duty of good faith representation, because plaintiff had not demonstrated that such inadequacy was "so egregious" as to be "arbitrary."). Accordingly, while Arteaga might reasonably have hoped for a more thorough investigation and more extensive preparation, he has failed to elicit any of the evidence that is crucial to his claim.

### 4. Failure to Present Witnesses at Arbitration Hearings

■ According to plaintiff, Ms. Spivak's failure to call any of the witnesses plaintiff allegedly requested for the arbitration hearing supports a finding that the Union violated its duty of fair representation. Again, plaintiff's argument is without merit. According to Arteaga's version of events, which I credit for purposes of this motion, Spivak told him just prior to the arbitration hearing that "it was unnecessary" to produce witnesses other than himself. (Arteaga Aff. ¶ 24.) Apart from this single fact, the record is devoid of any evidence regarding the Union's decision not to call other witnesses.

■ In hindsight, Spivak's determination that it was unnecessary to call any other witnesses at the arbitration hearing appears to have been harmful to plaintiff's case. If the security guard or other ISS employees had been called, such witnesses might have been able to make Arteaga's testimony more credible in the eyes of Arbitrator Stanton. However, decisions that appear in hindsight to be mere tactical errors "are [not] nearly sufficient to make out a prima facie case" that the Union breached its duty of fair representation. *Barr*, 868 F.2d at 43. Absent a showing that the Union's errors were "so egregious, so far short of minimum standards of fairness to the employee and so unrelated to legitimate union interests as to be arbitrary," this Court may not disturb the decision of Arbitrator Stanton. *Id.*

Based on all the facts presently before me, and viewing them in the light most favorable to Arteaga, he has fallen far short of the necessary showing. There is no indication that the Union's decisions, however misguided, were the result of bad faith or were "so egregious" as to "fall short of minimum standards of fairness." *Id.* Spivak cross-examined the ISS witness during the hearing, and Arteaga was allowed to testify fully regarding his work history, the incident involving the wine bottles, and his accusations against Cruz. In view of this uncontested evidence, and especially Arteaga's unrestricted testimony before Arbitrator Stanton, there is no indication that the Union's alleged failures seriously undermined the arbitral process. *See Santiago v. National Cleaning Contractors*, No. 88 Civ. 1172, 1992 WL 168258, at *6 (S.D.N.Y. June 29, 1992) ("Where an employee has had a chance to present his case, despite union lapses in representation, courts have granted summary judgment dismissing fair representation claims.")

### 5. Failure to Provide Transcript

■ The final basis for Arteaga's fair representation claim is that the Union failed to provide him with a transcript of the arbitral proceedings. Arteaga does not appear to claim that the Union has such a transcript

and is refusing to provide it to Arteaga; rather, according to Arteaga, Spivak did not require a reporter to be present at the arbitration hearing. (Arteaga Aff. ¶ 20.) There is no indication that the Union's failure to have the arbitral proceedings recorded was the result of bad faith, and there is nothing inherently unfair about the Union's decision not to have a reporter present. *See Ciano*, 1995 WL 489452, at *14 ("Plaintiff has cited no cases, and we have found none, that support his characterization of the practice of not recording arbitration hearings as a breach of the duty of fair representation.") It is also difficult to decipher precisely how the failure to arrange for a transcript of the arbitration "seriously undermines" the entire arbitral process. As with each of his other allegations, Arteaga has again failed to come forward with evidence by which a reasonable jury could find that the Union breached its duty of fair representation.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted, and plaintiff's complaint is dismissed in its entirety.

So Ordered.