Victor COUREAU, Plaintiff,

v.

Bill GRANFIELD, Local 100
Unite Here, Defendant.

No. 13–cv–0265 (WFK)(MDG).

United States District Court,
E.D. New York.

April 26, 2013.

**316**

Victor Coureau, Brooklyn, NY, pro se.

Nathaniel K. Charny, Thomas E. Feeney, Charny & Associates, Rhinebeck, NY, for Defendant.

*DECISION AND ORDER*

WILLIAM F. KUNTZ II, District Judge.

Victor Coureau ("Plaintiff") commenced this action *pro se* against Bill Granfield ("Defendant"), President of Local 100 UNITE HERE (the "Union"), alleging various wrongs and injustices related to, *inter alia,* personal injuries, termination of benefits, fraudulent inducement, and discrimination on the basis of race. The Court construes Plaintiff's allegations to arise from the Union's duty of fair representation and/or Title VII of the Civil Rights Act of 1964. Defendant now moves to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendant's motion is granted in its entirety and Plaintiff's complaint is dismissed with prejudice.

## I. Background

Because the Plaintiff is *pro se,* the Court has liberally construed the record in this case, including Plaintiff's handwritten Complaint and Opposition Affidavit, and Plaintiff's two handwritten letters to the Court, dated February 22, 2013 (Dkt. No. 6) and March 6, 2013 (Dkt. No. 7), respectively.

The Complaint asserts an assorted list of allegations, which include:

- Plaintiff, having entered into a collective bargaining agreement with the Union in 1992, was fired twice without justification and did not receive pay or unemployment benefits for 12 weeks.

- Plaintiff was subjected to violence in the workplace, including bullying, yelling and pushing, which violence caused three accidents in 1999, 2004

and 2008, respectively. Plaintiff asserts the following injuries: loss of half a finger, loss of fingertips, and a knee injury. Plaintiff further asserts that the Union caused this harm.

- The Union discriminates against black people.
- The Union failed to intervene when Plaintiff was expelled from a work location on July 14, 2010. On August 27, 2010, the Union told Plaintiff it filed a grievance on Plaintiff's behalf, but in fact failed to do so. The Union then failed to take Plaintiff's case to arbitration and forced Plaintiff to accept a $7,000 settlement in a moment of extreme distress.
- The Union violated Plaintiff's privacy and released private information about Plaintiff's membership to individuals and family members.
- The Union hired people known to be dangerous such that Plaintiff had to work in view of security cameras.
- The Union terminated Plaintiff's medical insurance in 2009 and 2010 and froze his pension, citing Plaintiff's undocumented immigrant status as reason for the termination and freeze. Plaintiff denies that he is undocumented.
- The Union sought to sell Plaintiff as a personal slave to a third party restaurant and art gallery (identified as "Teddy's Bar and Grill," *infra*).
- The Union opposed Plaintiff's effort to elect a Union representative who was well-liked by Union members and instead hired two bad guys.
- Plaintiff's termination on July 14, 2010 is not documented by his employer but was caused as a result of Defendant's actions.

Plaintiff supplements these allegations with additional allegations by letter to the Court dated February 22, 2013 (Dkt. No. 6):

- Teddy's Bar and Grill (presumably one of Plaintiff's previous employers, although never explicitly identified as such)[1] threatened to kill Plaintiff, to send him to jail, to send him back to Haiti, and to have the police look for him every time he tries to get away from them.
- The Union received $10,000 from the owner of Teddy's Bar and Grill to get rid of Plaintiff.
- Plaintiff was never advised of the reason for his discharge from Teddy's Bar and Grill.
- Plaintiff's $7,000 settlement award is not final and binding, and Plaintiff may sue his employer under Section 301 [of the Labor Management Relations Act, 29 U.S.C. § 185(a) ]. The Union may be liable for damages arising from the breach of the collective bargaining agreement.
- "I need to get off the streets right away. I have no place to hide. They following me with mad dogs. They also have car drivers following me. They have every bank and every ATM machine covered. I cannot buy a metrocard. I cannot get on the train. I cannot buy anything in [a] store especially coffee and sandwiches. They need to kill me. My life is in danger every day of the week. They also have some guys with guns follow me everywhere."

Defendant's statement of facts clarifies some of the above-listed allegations. De-

---

1. Defendant states that at no time has the Union or Defendant had any relationship with Teddy's Bar and Grill of Brooklyn, New York. *See* Decl. of Lia Fiol–Matta, at ¶¶ 23–24.

fendant asserts that he is President of the Union, UNITE HERE Local 100, a labor union representing food service and restaurant workers in the New York area. Plaintiff was a member of the Union from December 1994 until July 2010. Def.'s Br. at 1. On July 14, 2010, Plaintiff's employment with Sentry Center (the "Employer") was terminated. *Id.* Thereafter, the Union filed a grievance on Plaintiff's behalf, alleging Plaintiff's termination was in violation of the collective bargaining agreement between the Union and the Employer, which governed the terms and conditions of Plaintiff's employment. *Id.* Following this filing, around August 23, 2010, the Union, Employer, and Plaintiff executed a settlement agreement whereby Plaintiff received a settlement payment in the amount of seven thousand dollars ($7,000) in exchange for the Union's withdrawal of the grievance and Plaintiff not being restored to his position with the Employer (the "Settlement"). *Id.* at 1–2. Around August 30, 2010, Plaintiff filed an unfair labor practice charge with the National Labor Relations Board ("NLRB") alleging the Union had failed to process Plaintiff's grievance since August 23, 2010. Around September 1, 2010, the NLRB closed Plaintiff's case. *Id.* at 2.

Defendant asserts, and Plaintiff does not dispute, neither Defendant nor the Union has had any contact with Plaintiff concerning the allegations asserted in the Complaint since the parties' execution of the Settlement. *Id.* On November 26, 2012, Plaintiff, proceeding *pro se*, brought this action in New York State Supreme Court, Kings County. *Id.* Defendant removed Plaintiff's action to this Court on January 16, 2013 on the ground that Plaintiff's claims arise under Section 9(a) of the National Labor Relations Act and federal common law. *Id.; see also* Notice of Removal at 2.

## II.  Motion to Dismiss Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), each claim must set forth sufficient factual allegations, accepted as true, "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks and citation omitted). At this stage, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in favor of Plaintiff, the non-movant. *Harris v. Mills,* 572 F.3d 66, 71 (2d Cir.2009). However, the Court need not credit "legal conclusions" in a claim or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 72 (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937) (internal quotation marks and alteration omitted).

When determining the sufficiency of a claim under Rule 12(b)(6), the Court may consider only the allegations on the face of a pleading. *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir.2007). Nevertheless, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.; see also Intl Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir.1995) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). The Court may consider documents outside of the pleading if the documents are integral to the pleading or subject to judicial notice. *Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150, 156 (2d Cir.2006).

Courts are particularly hesitant to dismiss actions filed by *pro se* litigants, as *pro se* complaints are held to "less stringent standards than formal pleadings drafted

by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). The Court must read *pro se* complaints liberally and "interpret them to raise the strongest arguments that they suggest." *Pabon v. Wright,* 459 F.3d 241, 248 (2d Cir.2006) (internal quotation marks and citation omitted). As a general rule, an action brought *pro se* "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hughes v. Rowe,* 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). "However, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not support a cause of action." *Wright v. Krom,* No. 10 Civ. 3934, 2011 WL 4526405, at *2 (S.D.N.Y. Sept. 29, 2011) (Owen, J.) (internal quotation marks and citation omitted). "[T]he Court need not argue *a pro se* litigant's case nor create a case for the *pro se* which does not exist." *Garzon v. Jofaz Transp., Inc.,* No. 11–CV–5599, 2013 WL 783088, at *1 (E.D.N.Y. Mar. 1, 2013) (Mauskopf, J.) (internal quotation marks and citation omitted). When a *pro se* plaintiff fails to satisfy a pleading requirement, the Court must dismiss the claim. *Id.* (citing *Rodriguez v. Weprin,* 116 F.3d 62, 65 (2d Cir. 1997)).

## III. Discussion

Many of Plaintiff's allegations do not appear, on their face, to raise any legal causes of action. However, this Court's subject matter jurisdiction is premised on federal-question jurisdiction because Defendant construes Plaintiff's claims to primarily arise from Section 9(a) of the National Labor Relations Act and federal common *law.* *See* Notice of Removal at 2 (Dkt. No. 1). Moreover, in Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss, Defendant elaborates that many of Plaintiff's allegations stem from the Union's role as Plaintiff's exclusive bargaining representative and therefore a state claim for breach of Defendant's duty of fair representation. *See* Def.'s Br. at 3–5 (noting Plaintiff alleged, *inter alia,* Defendant "[f]ailed to take Plaintiff to the Union Hall for the filing of [his] benefit in August 2010," "[f]ailed to take some unspecified action related to Plaintiff's work-related injuries in 1999, 2004 and 2008," and "[e]ngaged in racial discrimination by refusing to respond every time [Plaintiff had] a problem for the past 20 years") (internal quotation marks and citations omitted). Because Defendant's interpretation construes Plaintiff's complaint to assert a legitimate cause of action, which reasonably flows from Plaintiff's allegations, and because Plaintiff does not object to this proposed interpretation, the Court will analyze Defendant's motion as it applies to this cause of action. *See, e.g., Gorham v. Transit Workers Union of Am., AFL–CIO, Local 100, NYCTA,* No. 98 CIV. 313, 1999 WL 163567, at *2 (S.D.N.Y. Mar. 24, 1999) (Kochi, J.) (analyzing motion to dismiss cause of action for breach of duty of fair representation based on defendant's unopposed interpretation of the *pro se* plaintiff's complaint). Accordingly, the Court will determine whether Plaintiff has stated a plausible claim for breach of the duty of fair representation.

### A. Plaintiff Fails to State a Claim for Breach of the Duty of Fair Representation

The duty of fair representation stems from a union's status as the exclusive bargaining agent of its employees, which authority is derived from the National Labor Relations Act. *See Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *see also Arteaga v. Bevona,* 21 F.Supp.2d 198, 204 (E.D.N.Y. 1998) (Gleeson, J.). "A union breaches the

duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Pinkney v. Progressive Home Health Servs.*, 367 Fed.Appx. 210, 212 (2d Cir.2010) (internal editing and quotation marks omitted). "[A] union's decision to settle . . . is a discretionary determination to be made by the union and does not breach the duty of fair representation." *Vaughn v. Am. Tel. & Tel. Co.*, 92 Fed. Appx. 21, 23 (2d Cir.2004). Rather, "a union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." *Pinkney*, 367 Fed.Appx. at 212 (internal editing and quotation marks omitted).

■ A claim for breach of the duty of fair representation is subject to a six-month statute of limitations. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169–72, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In the Second Circuit, the cause of action "accrues no later than the time when plaintiffs knew or reasonably should have known that such a breach of the duty of fair representation had occurred, even if some possibility of nonjudicial enforcement remained." *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 67 (2d Cir.1995) (quoting *Santos v. Dist. Council*, 619 F.2d 963, 969 (2d Cir.1980)) (internal editing and quotation marks omitted). At the latest, "[i]t is beyond dispute that" the limitations period begins to run on the date of filing an NLRB charge that alleges the same misconduct charged in the judicial complaint. *Kavowras v. New York Times Co.*, 328 F.3d 50, 55 (2d Cir.2003).

■ Plaintiff filed the complaint in this action on November 26, 2012. *See generally*, Notice of Removal, Ex. A (Complaint and Request for Judicial Intervention). Therefore, in order for his claim to proceed as timely, Plaintiff must show that he either did not know or reasonably should not have known that a breach of the union's duty of fair representation had occurred until May 26, 2012, at the earliest. However, as discussed, Plaintiff filed an unfair labor practice charge with the NLRB, alleging the Union failed to process a grievance on his behalf, on August 30, 2010. Therefore, the six-month limitations period for Plaintiff's claim of Defendant's failure to process his grievance began to run on that date and expired on February 28, 2011. To the extent Plaintiff alleges conduct outside the scope of the NLRB charge, the Court finds that Plaintiff nonetheless must have been aware of these alleged breaches before May 26, 2012 because Plaintiff had not been a union member since July 2010, *see* Decl. of Lia Fiol–Matta, at ¶ 7, and Plaintiff had no contact with the Union or with Defendant between August 23, 2010 and the filing of the complaint in this action. *Id.* at ¶ 14. Accordingly, Plaintiff's claim for breach of the duty of fair representation is dismissed as barred by the six-month statute of limitations.[2]

■ Where a breach of a duty of fair representation was allegedly motivated by race, the claim may also be brought under Title VII. *Gorham*, 1999 WL 163567, at *3 (citations omitted). However, "a finding that the union breached its duty of fair representation is essential to the existence of a Title VII claim." *Id.* Having already

---

**2.** The Court notes that Plaintiff's claims for breach of the Union's duty of fair representation may be dismissed on the separate ground that Plaintiff failed to properly name or serve the Union as a Defendant in this action and

Defendant Bill Granfield, President of the Union, cannot be held individually liable for a breach of the duty of fair representation. *Morris v. Local 819, Int'l Bhd. of Teamsters*, 169 F.3d 782, 784 (2d Cir.1999).

concluded that Plaintiff's claims for breach of the duty of fair representation fail, a cause of action under Title VII cannot stand. Moreover, under Title VII, "a claimant may bring suit in federal court *only* if [he] has filed a timely complaint with the EEOC [Equal Employment Opportunity Commission] and obtained a right-to sue letter." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir.2001) (emphasis added). Plaintiff has failed to plead that he has exhausted his remedies by filing and EEOC complaint.[3] For this separate reason, Plaintiff's claim may not proceed under Title VII.

### IV. Conclusion

Defendant's motion to dismiss is granted in its entirety, and Plaintiff's claims are dismissed with prejudice. Because no claims in this case survive summary judgment, the Clerk is directed to enter judgment in favor of Defendant and close the case.

*SO ORDERED.*

---

**3.** Defendant specifies that, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court lacks "the statutory or constitutional power to adjudicate" Plaintiff's claim because Plaintiff failed to plead that administrative prerequisites have been satisfied. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000); Def.'s Br. at 3 n. 2. "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998).